

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# Jimenez-Mora v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1396

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jimenez-Mora v. Atty Gen USA" (2004). *2004 Decisions.* Paper 1032.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1032

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1396

ANA MONICA JIMENEZ-MORA,

Petitioner

v.

JOHN ASHCROFT, as Attorney General of the United States;
ANDREA QUARANTILLO, as District Director
for the Immigration and Naturalization Service

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(No. A76 480 038)

Argued on January 22, 2004

Before: ALITO, CHERTOFF, Circuit Judges, and DEBEVOISE, District Judge[*]

(Opinion Filed:  February 3, 2004)

CHERYL L. BARATTA (Argued)
21 Fairmont Avenue
Somerville, New Jersey 08876

*Counsel for Petitioner*

---

[*]The Honorable Dickinson R. Debevoise, District Judge of the United States
District Court for the District of New Jersey, sitting by designation.

PETER D. KEISLER
DONALD E. KEENER
CHRISTOPHER C. FULLER
JOHN M. MCADAMS, JR.
MICHELLE E. GORDON (Argued)
Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

*Counsel for Respondent*

## OPINION OF THE COURT

PER CURIAM:

### I.

Ana Monica Jimenez-Mora petitions for review of an order of the Board of Immigration Appeals (BIA) denying her claims for asylum, withholding of removal, relief under the U.N. Convention Against Torture (CAT), and, in the alternative, voluntary departure. For the reasons stated below, we deny the petition for review.

### II.

Because we write only for the parties, we need not discuss the factual background of this case, but proceed directly to the substance of Jimenez-Mora's claims.

### A.

Jimenez-Mora first argues that the regulation setting forth the BIA "affirmance

without opinion" (AWO) procedures, see 8 C.F.R. 3.1(e)(4), violates the Due Process Clause. The argument that this regulation is unconstitutional on its face was essentially foreclosed by our recent *en banc* decision in Dia v. Ashcroft, 2003 U.S. App. LEXIS 25901 (3d Cir. Dec. 22, 2003). In Dia, we held that "the due process right to an 'individualized determination' was accorded to [the petitioner] at the IJ level, where the IJ 'reasoned' her decision, and the BIA gave the result its imprimatur pursuant to its regulations." Id. at *24. Jimenez-Mora received just such an "individualized determination" of her claims by the IJ in the first instance, and under Dia, that is sufficient for the purposes of due process.[1]

Jimenez-Mora also contends that her due process rights were violated because the BIA failed to properly apply the AWO regulations in her case. This argument also fails.

_____

[1]Jimenez-Mora argues that one of the claims she asserted before the BIA was one that had not been raised before or considered by the IJ: that the IJ "violated her right to due process when he prejudged her case based on her conviction for bribery." Appellant Br. at 29. Even if it were the case that Jimenez-Mora was indeed denied an "individualized determination" with respect to this claim, she would still need to prove that she was prejudiced by that denial before it would constitute a violation of due process. See Aviola-Macias v. Ashcroft, 328 F.3d 108, 114-15 (3d Cir. 2003). Jimenez-Mora suffered no prejudice here because her "prejudgment" claim was meritless in any event. The only evidence Jimenez-Mora cites of unfair prejudgment is a set of comments made by the IJ, prior to the taking of testimony, to the effect that her case was not a particularly strong or sympathetic one in light of her bribery conviction. See Appellant Br. at 30-32. Whether or not advisable, these remarks, standing alone, do not show that the IJ was prematurely biased against Jimenez-Mora, let alone that Jimenez-Mora was (as she alleges) "denied a fair hearing on [her] claims." Appellant Br. at 35. Accordingly, it cannot be said that Jimenez-Mora would have been unconstitutionally prejudiced by the failure to receive an "individualized determination" regarding her prejudgment claim.

3

Jimenez-Mora presents conclusory allegations that her case is not "squarely controlled by precedent" and that the questions she raises are not "insubstantial," see Appellant Br. at 29-30, but in fact, it is far from clear that Jimenez-Mora's case did not satisfy the requirements of 8 C.F.R. 3.1(e)(4), especially considering the wide latitude accorded to the agency in interpreting that regulation. See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945). Moreover, even assuming that the agency erred in applying the AWO procedure in her case, such a mistake would not necessarily be an error of constitutional magnitude. Of course, it is true that an agency is obligated to follow its own regulations, United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267 (1954), but "not every procedural error that is not harmless violates due process . . . ." Ortiz-Salas v. INS, 992 F.2d 105, 106 (7th Cir. 1993). We find no violation of due process here.

**B.**

Jimenez-Mora next argues that the IJ erred in finding that she had not filed her petition for asylum in a timely manner under 8 U.S.C. § 1158(a)(2)(B). The government responds by contending that this court lacks jurisdiction to review the correctness of the IJ's timeliness determination. See 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)(B)]."); see also Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003) ("[T]he language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations

4

period . . . .").

Jimenez-Mora maintains that she is not contesting the "determination" regarding the timeliness of her application *per se*, but rather is making a collateral attack on the *process* the IJ applied in making that determination. Cf. McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991) (provision barring appellate judicial review of a "determination respecting an application" did not foreclose "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications"). But Jimenez-Mora's claim is plainly distinguishable from the sort presented by the petitioners in McNary. There, a group of immigrants alleged that the general procedures used by the INS to make determinations of "SAW" status violated constitutional guarantees of due process. Id. at 487. They did not seek review of the denials of their applications for "SAW" status, nor could they have, under the jurisdictional restrictions in force. Id. at 494; 8 U.S.C. § 1160(e)(1). Jimenez-Mora, by contrast, seeks to have overturned the individual determination made in her specific case that her application was time-barred. Cf. id. at 492 ("'[A] determination' describes a single act rather than a group of decisions or a practice or procedure employed in making decisions.") If we were to accept Jimenez-Mora's claim that her argument merely involves a collateral attack on the *procedures* used in making a determination, it is hard to imagine a case that would *not*

fall outside the jurisdictional bar of § 1158(a)(3).[2]

Jimenez-Mora complains that if jurisdiction is denied here, then "there will be no review at all of [her] collateral and constitutional challenges to the process of deciding the timeliness issue." Appellant Reply Br. at 6.[3] Yet this is not necessarily true. As a general matter, such arguments may be raised in a habeas proceeding, unless a pertinent statute has adequately repealed habeas jurisdiction. See Liang v. INS, 206 F.3d 308, 317 (3d Cir. 2000); see also INS v. St. Cyr, 533 U.S. 289 (2001). In this forum, however, we are without jurisdiction to consider Jimenez-Mora's challenge to the timeliness determination, and her petition for asylum must consequently fail.[4]

---

[2]For example, a determination that the year time limit had not been met because the IJ believed certain witnesses regarding the applicant's date of arrival and not others could be appealed (under Jimenez-Mora's theory) by alleging that the reasoning or procedures employed by the IJ in weighing the credibility of the testimony presented was unsound.

[3]Jimenez-Mora's constitutional argument – that the IJ's alleged failure to correctly interpret the regulations amounted to a violation of her due process rights – was raised for the first time in her reply brief, and so we consider it waived. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 191 n.35 (3d Cir. 2001). In any event, we doubt that the IJ's interpretation of the regulation was unreasonable, let alone unconstitutional.

[4]Jimenez-Mora also argues that the IJ erred when he declined to grant asylum and/or voluntary departure as a discretionary matter. There was no abuse of discretion here. Contrary to Jimenez-Mora's allegations, the record indicates that the IJ adequately considered the evidence presented to him in making his decision. Notably, the IJ did not find credible Jimenez-Mora's contention that her bribery conviction should be discounted because she had not known at the time that what she was doing was wrong. A.R. at 61. Accordingly, his decision to deny relief despite Jimenez-Mora's "expressions of regret and remorse" was hardly arbitrary or capricious.

## C.

Jimenez-Mora further claims that the IJ erred in denying her withholding of removal.[5] To be eligible for withholding of removal, Jimenez-Mora must show that if she is forced to return to Colombia, there is a "clear probability" that she will be persecuted "on account of" a specified ground such as "membership in a particular social group." See 8 U.S.C. § 1231(b)(3)(A). "A clear probability means 'more likely than not.'" Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003).

The crux of the IJ's decision seems to be the finding that Jimenez-Mora was not persecuted "on account of" her membership in the alleged social group of "businesspeople." As the IJ explained, "[T]hese people who were after [Jimenez-Mora] and her husband had no interest in . . . their social group . . . . These individuals were targeted because they had money. People who have money are the people that you take the money from." A.R. at 66.

Jimenez-Mora presented no evidence that she and her husband had been threatened primarily because they were businesspeople. If Jimenez-Mora had been able to show (for example) that she actually had little money notwithstanding her status as a businessperson, perhaps the finding that Jimenez-Mora was targeted solely because of her wealth could be contested. Indeed, Jimenez-Mora contends that she and her husband "did

---

[5]Note that the one-year filing requirement applies only to asylum applicants, and not to petitions for withholding of removal and relief under CAT.

7

not have money at [the] time" the threats were made because "sales were low." A.R. at 128. However, the record demonstrates that Jimenez-Mora certainly owned capital ("two music stores") as well as enough money on hand to pay for the installation of a security door and a three-month vacation to Disney World. A.R. at 126, 128-29. Moreover, Jimenez-Mora herself testified that the guerrilla organization had at its disposal means for ascertaining the financial resources of its victims, see A.R. at 139, and so it is not unreasonable to conclude that the callers were aware that Jimenez-Mora possessed these assets. This evidence is consistent with what the IJ found to be the real motivation of the mysterious callers: they targeted Jimenez-Mora "on account of" her wealth, and not her status as a businessperson. See In re V-T-S-, 21 I&N Dec. 792 (BIA 1997) (no asylum claim where kidnaping was motivated by petitioner's ability to pay a ransom, rather than membership in social group); Matter of S-V-, Int. Dec. 3430 (BIA 2000) ("[I]n the absence of evidence to suggest other motivations, evidence that the perpetrators were motivated by a victim's wealth will not support a finding of persecution within the meaning of the Act.").[6]

The IJ properly relied on record evidence to support his implicit finding that Jimenez-Mora was a victim of criminal extortion rather than persecution "on account of" a protected ground. The IJ cited the State Department Country Reports as indicating that

_____

[6]Jimenez-Mora does not appear to advance (and so we do not address) the alternative argument that she was persecuted "on account of" her membership in the social group of "the wealthy."

8

the kidnaping and extortion of people with wealth "occurs with regularity in Colombia." A.R. at 65. Because "ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum," Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001), Jimenez-Mora has failed to show that she is likely to be persecuted "on account of" her membership in a protected social group.

In further support of the denial of withholding, the IJ found that it was possible (although by no means assured) that if Jimenez-Mora were forced to return to Colombia, she would be able to relocate herself in a different part of the country where she might be able to "hide her financial situation better." A.R. at 68. Jimenez-Mora claims this is not true, citing the 1999 Country Report detailing the ubiquitous nature of the guerrilla groups' influence in Colombia. See Appellant Br. at 52. The government, in response, points to the State Department Profile of Asylum Claims and Country Conditions for Colombia, which explains that the threat to wealthy individuals is "in most cases . . . localized in nature." A.R. at 235. This statement from the Colombia Profile seems to squarely support the IJ's finding.

On the other hand, the IJ is not exactly clear in quantifying the *probability* that internal relocation within Colombia would actually work in Jimenez-Mora's case – that is, whether it is more likely than not that Jimenez-Mora would not be subject to further threats if she were removed to a different area in Colombia other than Medellin. For example, he says that she "could escape any immediate threats of harm," though she

would "not necessarily be safe," and that "perhaps" she could "hide her financial situation better" somewhere else in Colombia. A.R. at 68. In the end, however, the IJ appears to conclude that "people in another part of Colombia would not know" that Jimenez-Mora was wealthy and implies that it would be "reasonable" for her to make an attempt to live elsewhere within her country of birth. Id. These propositions are, of course, supported entirely by the Colombia Profile, which states that in "most" cases the threat to wealthy individuals is localized and that "internal relocation is often a viable option." A.R. 235. While the IJ might have spoken with greater clarity, his findings with regard to internal relocation support the conclusion that there is no "clear probability" that Jimenez-Mora will be persecuted if removed to an area of Colombia other than Medellin.

Accordingly, the IJ correctly denied withholding of removal on the grounds that Jimenez-Mora did not show that she would be persecuted "on account of" her status as a businessperson, or that there was a "clear probability" that she would be persecuted if removed to Colombia.

**D.**

Finally, Jimenez-Mora claims the IJ erred in rejecting her petition for relief under the Convention Against Torture. To be eligible for CAT relief, Jimenez-Mora must prove that she is more likely than not to be tortured if removed to Colombia. See Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). Under the relevant regulations, "torture" means "severe pain or suffering" inflicted "at the instigation of or with the consent or

10

acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. 208.18(a)(7). The IJ denied Jimenez-Mora relief under CAT on the grounds that there was "no testimony at all in this case that the guerrillas, even if they were to torture the respondent, would be doing so with the acquiescence of the government." A.R. at 67. The IJ noted that the mere fact that a government is unable to control or stop alleged torture is insufficient to show acquiescence. See A.R. at 67, citing Matter of S-V-, Int. Dec. 3430 (BIA 2000).

At her hearing, Jimenez-Mora claimed to have tried to seek help from the police and federal authorities in the face of the threatening phone calls, and that those governmental entities did nothing to assist her despite her pleas. In fact, Jimenez-Mora testified that, on the local level at least, the street police often actually "united" with the guerrilla forces. See A.R. at 132. Thus, it is somewhat unclear from her testimony whether the government officials, in declining to help Jimenez-Mora, did so because they lacked the *ability* to help her, or whether they simply *chose* not to help. See A.R. at 133 (testimony that the federal authorities "said that until somebody's dead they can't do anything"). Obviously, if Jimenez-Mora's testimony that the local police united with the guerrillas is accurate and credible (and the IJ made no finding that it was not), that fact

11

would suggest that the government was not simply unable to help Jimenez-Mora, but that it acquiesced in some degree. On the other hand, the IJ's citation to Matter of S-V- in connection with the CAT claim suggests that he may have been relying on the BIA's determination in that case that the "[Colombian] Government actively, although to date unsuccessfully, combats the guerrillas," and thus does not "acquiesce to the types of activities that [Jimenez-Mora] fears [she] would suffer at the hands of the guerrillas." Id. at 11. Thus, we believe that substantial evidence supports the IJ's finding of non-acquiescence.

Moreover, even if we were to rule that the finding of government acquiescence was not supported by substantial evidence, a close reading of the IJ's opinion indicates that he did not necessarily rely solely on a lack of government acquiescence in denying CAT relief. The IJ states, "There is no testimony at all in this case that the guerrillas, *even if they were to torture the respondent*, would be doing so with the acquiescence of the government." A.R. at 67 (emphasis added). The IJ's use of the subjunctive "even if they were" suggests that he did not think it likely that Jimenez-Mora would be subject to "torture" if forced to return to Colombia. Such a position, of course, is consistent with his earlier rulings finding it unlikely that Jimenez-Mora would be "persecuted" upon removal to Colombia – at least, upon removal to anywhere in Colombia besides Medellin. While the IJ certainly could have been more explicit in his analysis, we think it is clear enough that he intended to implicitly incorporate his earlier "persecution" analysis here, and that

12

his reasoning along these lines can be "reasonably . . . discerned." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Accordingly, we agree that the denial of CAT relief may be supported on the additional ground that Jimenez-Mora has failed to show that she will "more likely than not" be tortured if removed to Colombia.

## III.

For the foregoing reasons, Jimenez-Mora's petition for review is denied.

/s/ Samuel A. Alito, Jr.
Circuit Judge