# United States Court of Appeals
## For the First Circuit

No. 09-1903

YULMA MARILI MENDEZ-BARRERA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, Selya and Howard, <u>Circuit Judges</u>.

<u>Gerald D. Wall</u> and <u>Greater Boston Legal Services</u> on brief for petitioner.

<u>Tony West</u>, Assistant Attorney General, Civil Division, United States Department of Justice, <u>Jamie M. Dowd</u>, Senior Litigation Counsel, and <u>Andrew N. O'Malley</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

April 15, 2010

**SELYA**, **Circuit Judge**.    The petitioner, Yulma Marili Mendez-Barrera, is a native and citizen of El Salvador.  She seeks judicial review of an order of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture (CAT).  After careful consideration we deny this petition.

The background facts are easily stated.  The petitioner entered the United States illegally, through Mexico, on April 21, 2006.  Approximately two weeks later, the Department of Homeland Security initiated removal proceedings against her.

Just before the expiration of the one-year filing deadline, see 8 U.S.C. § 1158(a)(2)(B), the petitioner sought asylum.  Pertinently, the petitioner claimed that, if repatriated, she would face persecution by gang members in El Salvador on account of her religion, political opinion, and membership in a particular social group.

At a hearing before an immigration judge (IJ) on June 1, 2007, the petitioner conceded removability but pressed for asylum, withholding of removal, and protection under the CAT.  She testified that, while in El Salvador, she engaged in many community activities, participated in athletics at her school, regularly attended a local church, and participated in political affairs. She claimed that her diverse community involvement made her a

-2-

target for gang members. Beginning in 2003, gang members would stop her on the street and endeavor to recruit her, threatening sexual abuse if she did not acquiesce.

According to the petitioner, this was only the tip of the iceberg. She described two specific occasions on which gang members attacked her brother, ostensibly to pressure her to join their ranks. She also averred that gang members threw rocks at her family's home, causing the roof to buckle. By 2006, she no longer felt safe participating in her myriad community pursuits and, thus, fled from El Salvador.

At the conclusion of the hearing, the IJ found the petitioner credible, but denied relief due to a lack of corroborating evidence. In this regard, the only other evidence presented at the hearing, apart from the petitioner's testimony,[1] went to generalized accounts of country conditions in El Salvador (including accounts of gang violence).

The petitioner appealed. The BIA rejected her appeal, reasoning that, even if the IJ had overstated the need for corroboration, the petitioner still had not carried her burden of showing either past persecution or a well-founded fear of future persecution on account of a protected ground. In so holding, the BIA singled out the petitioner's claim that she was a member of a

---

[1] In addition to what is recounted above, the petitioner's testimony also included second-hand accounts of two incidents that allegedly had transpired in El Salvador after she fled.

social group of "young women recruited by gang members who resist such recruitment."  In the BIA's view, that claim failed because, in the asylum context, social group membership requires that the group have particular and well-defined boundaries and possess a recognized level of visibility.  This timely petition for judicial review followed.

Although the BIA upheld the IJ's decision, it did so on different reasoning.  Thus, we review the BIA's order directly and singularly.  See Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008) (explaining that when "the BIA has conducted an independent evaluation of the record and rested its affirmance of the IJ's decision on a self-generated rationale," then "judicial review normally focuses on the decision of the BIA").[2]

Our review proceeds pursuant to the substantial evidence standard.  In accordance with the somewhat tautological formulation of that standard, we must respect the BIA's findings as long as they are supported by substantial evidence in the record as a whole.  Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007).  This means, in effect, that the BIA's findings of fact will be upheld

_____

[2] We do not suggest that the IJ erred in requiring corroboration.  Under the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(ii)), an alien bears the ultimate burden of persuasion, so the absence of easily obtainable corroborating evidence sometimes can be of decretory significance.  See, e.g., Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008).  Here, however, the BIA did not reach the question of corroboration, and we too can stop short of reaching it.

unless the record is such as would compel a reasonable factfinder to reach a contrary determination. Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992)). We review questions of law de novo, ceding some deference to the BIA's interpretation of the statutes and regulations that come within its purview. See Elien v. Ashcroft, 364 F.3d 392, 396-97 (1st Cir. 2004).

At the threshold, we must confront the petitioner's two-pronged argument that the BIA failed to conduct an individualized assessment of her claims and did not sufficiently articulate the basis for its decision. For ease in exposition, we bundle these assertions together.

There is no requirement that the BIA wax longiloquent in carrying out its adjudicative role. A brief decision that goes directly to the point will often suffice. That is not to say that the BIA has carte blanche. We expect the BIA "to make findings on all grounds that are necessary" to support its decision. Rotinsulu v. Mukasey, 515 F.3d 68, 73 (1st Cir. 2008). Nevertheless, "those findings can be either explicit or implicit." Id. (citing Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005)). As long as the "essence of the BIA's decisional calculus" is discernible, the BIA need not "illuminate the path of its reasoning . . . at great length or in exquisite detail." Lopez-Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).

The BIA's decision in this case satisfies these criteria. The BIA did not mince words but, rather, bluntly articulated an individualized basis for its rejection of the petitioner's claims. It explained that the petitioner's testimony, though credible, was not enough to show that her fear of violence at the hands of El Salvadoran gangs amounts to fear of persecution on account of a statutorily protected ground. It proceeded to find that any harm the petitioner experienced in the past was not on account of a statutorily protected ground. And with respect to the social group claim, the BIA explained that the group proposed by the petitioner did not measure up because it lacked "particular and well-defined boundaries" and a "recognized level of social visibility." These and other statements adequately reveal the basis upon which the BIA denied relief. No more was exigible.

Moving from procedure to substance, we reach the petitioner's asylum claim. To be entitled to asylum, an alien must demonstrate that she is unable or unwilling to return to her homeland "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). In order to prove past persecution, an alien must show serious harm, Banturino v. Holder, 576 F.3d 10, 14 (1st Cir. 2009); a showing of persecution requires "more than mere

discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). If past persecution is established, that showing creates a rebuttable presumption that a well-founded fear of future persecution exists. Id. Absent evidence of past persecution, an alien can establish a well-founded fear of future persecution by showing that (a) the alien genuinely fears such persecution and (b) an objectively reasonable person in the alien's circumstances would fear such persecution. Lopez-Perez, 587 F.3d at 461-62.

The petitioner has cited a salmagundi of statutorily protected grounds in connection with her asylum claim, including religion and political opinion. Her principal argument, however, focuses on social group membership. We grapple with that argument first, mindful of the petitioner's claim that the relevant social group comprises "young [El Salvadoran] women recruited by gang members who resist such recruitment."

To prove persecution on account of membership in a particular social group, an alien must show at a bare minimum that she is a member of a legally cognizable social group. See Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009). Although the term "social group" is not defined by statute, the BIA has described a social group as a group of persons sharing a common, immutable characteristic that makes the group socially visible and sufficiently particular. See id.; see also In re C-A-, 23 I. & N.

Dec. 951, 959-60 (BIA 2006). We have upheld this delineation of the term's scope as reasonable. See Faye, 580 F.3d at 41; Scatambuli v. Holder, 558 F.3d 53, 59-60 (1st Cir. 2009); see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) (explaining that when a term in a statute is ambiguous, courts should give substantial deference to a reasonable construction of that term by an agency charged with administering the statute).

In contesting the appropriateness of this definition, the petitioner asserts that we should ignore it because the BIA changed the rules in the middle of the game; that is, the BIA departed from precedent, gutted its immutable characteristic test, and substituted a new (and unprecedented) social visibility test. This assertion contains more cry than wool.

The petitioner's underlying premise is sound. An administrative agency must respect its own precedent, and cannot change it arbitrarily and without explanation, from case to case. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005); Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). But that principle has no application here. The social visibility criterion does not signal an abandonment of the common and immutable characteristic requirement. Rather, it represents an elaboration of how that requirement operates. We have found this elaboration

to be not only reasonable but also within the BIA's purview. See Faye, 580 F.3d at 41 (explaining that a group's immutable characteristic should make it "generally recognizable in the community"); Scatambuli, 558 F.3d at 59 (recognizing that the BIA has permissibly refined its definition to emphasize an element of social visibility).

In a variation on this theme, the petitioner suggests that the BIA violated her due process rights by importing a requirement of social visibility into the decisional calculus after the record in her case was closed. This suggestion is disingenuous.

To be sure, the BIA's decision in this case cites two BIA decisions that were handed down after the petitioner's appearance in the Immigration Court. See In re S-E-G-, 24 I. & N. Dec. 579 (BIA 2008); In re E-A-G-, 24 I. & N. Dec. 591 (BIA 2008). But these decisions did not blaze a new trail; earlier case law echoed the same refrain. See, e.g., In re A-M-E & J-G-U-, 24 I. & N. Dec. 69, 73-74 (BIA 2007); In re C-A-, 23 I. & N. Dec. at 960; see also Scatambuli, 558 F.3d at 59-60 (noting that the BIA has used the social visibility criterion since 2006). Because the BIA's decision in this case did not rest on a new standard, the petitioner's due process claim is unavailing.

This brings us to the merits of the petitioner's argument that she was persecuted on account of her membership in a

particular social group. This argument fails because substantial evidence supports the BIA's determination that the putative social group was not legally cognizable.

We start with the social visibility criterion. For a group to satisfy this criterion, it must be generally recognized in the community as a cohesive group. See Faye, 580 F.3d at 41. The petitioner failed to provide even a scintilla of evidence to this effect. By the same token, she failed to pinpoint any group characteristics that render members of the putative group socially visible in El Salvador. On this record, then, the petitioner's proposed group does not supply an adequate profile for establishing membership. The putative group is simply too amorphous. This means, perforce, that the putative group — "young women recruited by gang members who resist such recruitment" — is not socially visible.

In an effort to neutralize the adverse effects of this evidentiary gap, the petitioner argues that it was her own visibility in the community that made her a target of the gangs. Even if that is true, it is beside the point. The relevant inquiry is whether the social group is visible in the society, not whether the alien herself is visible to the alleged persecutors. See Amilcar-Orellana v. Mukasey, 551 F.3d 86, 91 (1st Cir. 2008).

In all events, the petitioner's proposed social group is not sufficiently particular to be legally cognizable. Given her

loose description of the group, it is virtually impossible to identify who is or is not a member. There are, for example, questions about who may be considered "young," the type of conduct that may be considered "recruit[ment]," and the degree to which a person must display "resist[ance]." These are ambiguous group characteristics, largely subjective, that fail to establish a sufficient level of particularity. See Faye, 580 F.3d at 42.

The failure of the petitioner's social group claim leaves unresolved her fallback claims that she was persecuted on account of her religion and/or political opinion. These claims are an offshoot of her social group claim: she maintains that she harbors certain religious and political beliefs that lead her to resist gang membership.

These claims are misguided. Holding particular religious or political beliefs, without more, is not sufficient to show persecution on account of those beliefs. See Amilcar-Orellana, 551 F.3d at 91. There must be evidence that the would-be persecutors knew of the beliefs and targeted the belief holder for that reason.

There is no such evidence in the instant record. As the petitioner herself relates, gang members wanted her to sell drugs at her school, and their recruitment efforts stemmed from their desire to make money with the petitioner's help.

If more were needed — and we doubt that it is — the term "persecution" implies a governmental link; that is, "the government

must practice, encourage, or countenance it, or at least prove itself unable or unwilling to combat it." Lopez-Perez, 587 F.3d at 462. Here, the petitioner has failed to provide any evidence of a linkage between the government and the gangs. This failure of proof, in itself, dooms her application for asylum.

This ends the asylum issue. For the foregoing reasons, the BIA supportably rejected the petitioner's claim for asylum.

The same reasoning is dispositive of the petitioner's claim for withholding of removal. Because the petitioner failed to carry the devoir of persuasion for the asylum claim, her claim for withholding of removal necessarily fails. After all, withholding of removal requires a showing, by a clear probability, that an alien will more likely than not face persecution if repatriated. Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). This showing is more stringent than the showing required for asylum. See id. Consequently, "if a claim for asylum is rejected on the merits, a counterpart claim for withholding of removal must necessarily fail." Villa-Londono v. Holder, ___ F.3d ___, ___ n.1 (1st Cir. 2010) [No. 09-1832, 2010 WL 850190, at *2 n.1] (citing Orelien v. Gonzales, 467 F.3d 67, 73 (1st Cir. 2006); Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005)).

Finally, the petitioner argues that the BIA erred in denying her CAT claim. Gaining relief under the CAT entails a showing that an alien will, upon repatriation, more likely than not

-12-

face torture with the consent or acquiescence of the government then in power.  See 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1); Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008).  Apart from generalized country conditions reports, the petitioner has not presented any evidence of such a likelihood.

The country conditions reports, standing alone, do not carry the day.  Although such reports are sometimes helpful to an alien's claim, their generic nature is such that they are rarely dispositive.  See Seng v. Holder, 584 F.3d 13, 20 (1st Cir. 2009); Amouri, 572 F.3d at 35.  So it is here: because the petitioner failed to proffer any particularized facts relating to her specific claim that she would face a likelihood of government-sanctioned torture, we hold that substantial evidence supports the BIA's rejection of her CAT claim.

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.


**So Ordered**.