NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-3225

Y. V. Z.,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED
STATES OF AMERICA,
                                    Respondent


Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-013-426)

Before: McKEE, *Chief Judge*, FUENTES and COWEN,
*Circuit Judges*.

Submitted pursuant to Third Circuit LAR 34.1(a)
August 13, 2012

(Opinion filed:  August 14, 2012)

OPINION

McKEE, *Chief Judge*.

    Y. V. Z.[1] has filed a petition for review of a decision of the Board of Immigration

Appeals  dismissing her appeal from an Immigration Judge's denial of her applications

for asylum, withholding of removal and relief under Article 3 of the Convention Against

Torture ("CAT").  For the reasons that follow, we will deny the petition for review.

---

[1] By Order dated August 26, 2011, we granted Petitioner's motion to file her Briefs, Joint
Appendix  and other submissions under seal.

## I.

Because we write primarily for the parties, we need not set forth the factual or procedural history of this case.

Where, as here, the BIA adopts the reasoning of the IJ and supplements it with reasoning of its own, this court reviews both decisions. *See Paripovic v. Gonzales*, 418 F.3d 240, 243 n.4 (3d Cir. 2005). Factual findings are reviewed for substantial evidence and are considered conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Factual findings include, among other determinations, whether an applicant has suffered "persecution," holds a "well-founded" fear of future persecution, and has established that the past acts or future fears were or will be "on account of" a protected ground. *See Lukwago v. Ashcroft*, 329 F.3d 157, 167 & 173 (3d Cir. 2003).

Legal conclusions are reviewed de novo, with deference to the agency when implicating an ambiguous section of the Act. *See Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 (3d Cir. 2008). "Whether an applicant's proffered 'particular social group' is cognizable under [the INA] is a question of law and is therefore subject to de novo review. . . . [But] [s]uch de novo review of the BIA's legal determinations is of course 'subject to established principles of deference' set out in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)." *Id*. (citations and footnote omitted).

## II.

### 1. Asylum and withholding of removal.

2

Section 208 of the INA gives the Attorney General discretion to grant asylum to removable aliens. 8 U.S.C. § 1158(a). However, that relief can only be granted if the applicant is a "refugee." 8 U.S.C. § 1158(b). "[R]efugee" is defined as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside of any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Accordingly, an alien's ability to establish that he or she is entitled to relief as a refugee turns on whether he or she can establish persecution "on account of" one of the five statutory grounds. *INS v. Elias-Zacarias*, 502 U.S. 478 (1992). The alien must also establish that "at least one central reason" for the "persecution" was or would be because of (i.e., "on account of") one of the five protected grounds. 8 U.S.C. § 1158(b)(1)(B)(i). [2]

An applicant who establishes past persecution is "entitled to a presumption that his life or freedom will be threatened if he returns." *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir. 2006); *see* 8 C.F.R. § 208.16(b)(1). Where an applicant is unable to demonstrate that he or she has been the victim of past persecution, the applicant nonetheless becomes eligible for asylum upon demonstrating a well-founded fear of future persecution if returned to his or her native country. *See Abdulrahman v. Ashcroft*,

---

[2] The REAL ID Act, which applies to this case, supersedes the prior "at least in part" mixed-motive standard. *See Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 129 (3d Cir. 2009).

3

330 F.3d 587, 592 (3d Cir. 2003). The well-founded fear of persecution standard involves both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987). The subjective prong requires a showing that the fear is genuine. *Mitev v. INS*, 67 F.3d 1325, 1331 (7th Cir. 1995). Determining whether the fear of persecution is objectively reasonable requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to a given country. *Chang v. INS*, 119 F.3d 1055, 1065 (3d Cir. 1997).

If the persecution was not directly committed by the government or its agents, the petitioner must also establish that it was conducted "by forces the government is unable or unwilling to control." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007).

Withholding of removal is mandatory if "the Attorney General decides that [the] alien's life or freedom would be threatened" on account of a protected ground. 8 U.S.C. § 1253(h)(1) (re-codified, as amended, at 8 U.S.C. § 1231(b)(3)). To qualify for withholding of removal, an alien must establish a "clear probability of persecution," i.e., that it is more likely than not that he or she would suffer persecution upon returning home. *See INS v. Stevic*, 467 U.S. 407, 429-30 (1984). Since this standard is more demanding than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal. *Zhang v. Slattery*, 55 F.3d 732, 738 (2d Cir. 1995).

**2. Relief under the CAT.**

4

"An applicant for relief on the merits under [Article III] of the Convention Against Torture bears the burden of establishing 'that it is more likely that not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-175 (3d Cir. 2002) (quoting 8 C.F.R.§ 208.16(c)(2)). "The United States Senate specified this standard, as well as many of the other standards that govern relief under the Convention, in several 'understandings' that it imposed on the United States' ratification of the Convention Against Torture." *Id*. at 175 (citations omitted). "The standard for relief has no subjective component, but instead requires the alien to establish, by objective evidence, that he is entitled to relief." *Id*. (citation and internal quotation marks omitted). The alien's testimony, if credible, may be sufficient to sustain the burden of proof without corroboration. *Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000) (citing 8 C.F.R. § 208.16(c)(2)). If an alien meets his or her burden of proof, withholding of removal or deferring of removal is mandatory. INA § 241(b)(3); 8 C.F.R. §§ 208.16 – 208.18.

Under the implementing regulations for the Convention:

> Torture is defined as an act by which severe pain and suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

5

"[T]he regulations clearly state that there is no acquiescence to torture unless the relevant officials know about the torture *before* it occurs." *Sevoian*, 290 F.3d at 176 (citing 8 C.F.R. § 208.18(a)(7)) (emphasis in original). In *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007), we held that "acquiescence to torture [as used in the regulation] requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it."

The regulations also provide:

> (3) In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights with the country of removal, where applicable; and
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3). "[C]ountry conditions alone can play a decisive role [in determining if relief is warranted] . . . [and] the convention does not require that the prospective risk of torture be on account of certain protected grounds."[3] *Kamalthas v. INS*, 251 F.3d 1279, 1280 (9th Cir. 2001).

"Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel and inhuman treatment or punishment that do not amount to

---

[3] Because the risk of torture does not need to be on account of certain protected grounds, "the inability to state a cognizable asylum claim does not necessarily preclude relief under the [CAT]." *Kamalthas*, 251 F.3d at 1280.

6

torture." 8 C.F.R. § 1208.18(a)(2). Therefore, "even cruel and inhuman behavior by government officials may not implicate the torture regulations." *Sevoian*, 290 F.3d at 175. "[T]orture covers intentional governmental acts, not negligent acts or acts by private individuals not acting on behalf of the government." *In re J-E-*, 23 I. & N. Dec. 291, 299 (BIA 2002). The BIA has also held that "[v]iolence committed by individuals over whom the government has no reasonable control does not implicate" relief under the CAT. *In re Y-L-, A-G-, R-S-R-*, 23 I. & N. Dec. 270, 280 (BIA 2002). Similarly:

> [T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country. Specific grounds must exist that indicate the individual would be personally at risk.

*In re S-V-*, 22 I. & N. Dec. 1306, 1313 (BIA 2000).

### III.

Y.V.Z. makes a number of arguments in support of her petition for review. Each is considered separately below.

**1. Y.V.Z. suffered persecution at the hands of Huamani and has a well-founded fear of persecution at his hands "on account of" of her membership in her two proposed social groups, both of which have "social visibility."**

Y.V.Z. contended that she was persecuted by Huamani and had a well-founded fear of future persecution by him "on account of" her membership in two proposed "particular social group[s]," viz., "women in Peru who are in relationships that they are unable to leave" and "Peruvian women who complain of gender-based violence." As

7

further noted, both the IJ and the BIA held, *inter alia*, that the two proposed social groups were not cognizable under the INA because they lacked "social visibility." In this portion of her petition, Y.V.Z. argues that her proposed social groups have "social visibility" and that she suffered past persecution and has a well-founded fear of future persecution "on account of" her membership in both social groups.

This petition was originally listed for disposition for October 3, 2011. However, we held the petition CAV pending our decision in *Valdiviezo-Galdamez v. Attorney General of the United States*, No. 08-4564. That case has since been decided. *See Valdiviezo-Galdamez v. Attorney General of the United States* ("*Valdiviezo-Galdamez II*"), 663 F.3d 582 (3d Cir. 2011).

There, we discussed at length the BIA's initial interpretation of the term "particular social group" and its later development of the requirement of "social visibility" for determining whether a proposed social group constitutes a "particular social group" for purposes of asylum and withholding of removal under the INA. We held that the BIA's requirement of "social visibility" which was applied in denying Valdiviezo-Galdamez's applications for relief -- and which was applied in denying Y.V.Z.'s applications for relief -- was not entitled to deference under the standards established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because it was inconsistent with a number of cases in which the BIA had found that a proposed social group was a "particular social group" under the standard it had earlier established in *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985), *overruled on*

8

*other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). *Valdiviezo-Galdamez II*, 663 F.3d at 603-07.

Although the BIA can certainly change the requirements for establishing membership in a "particular social group," we explained in *Valdiviezo-Galdamez II* that the BIA must "announce[] a principled reason" for departing from established precedent, and that it had not done so in denying Valdiviezo-Galdamez's claim that young men resisting recruitment into a criminal gang could constitute a particular social group for purposes of establishing refugee status. *Id*. at 608. We held that, unless or until the BIA provides a "principled reason" for its departure from established precedent, its prior ruling in *Matter of Acosta* should control inquiries into whether an asylum applicant's proposed social group constitutes a "particular social group" under the Act. *Id*.[4] We therefore granted Valdiviezo-Galdamez's petition for review and remanded it to the BIA to analyze his proposed social group in a manner consistent with our holding in *Valdiviezo-Galdamez II*. *Id*. at 608-09.

Here, although both the IJ and the BIA held that the two social groups proposed by Y.V.Z. lacked "social visibility," *Valdiviezo-Galdamez II* does not require us to remand Y.V.Z.'s petition to the BIA because of the BIA's alternate holding that Y.V.Z. did not show that at least one central reason for the mistreatment she suffered at Huamani's hands, or her fear of future mistreatment by Huamani, was because of a protected ground,

---

[4] We also noted in *Valdiviezo-Galdamez II* that the "BIA must not only announce a 'principled reason' for any changes it makes to its definition of 'particular social group," any announced changes must be based on a permissible construction of the statute." 663 F.3d at 609 n.19.

i.e., her inclusion in a "particular social group." We agree with the BIA that the record c shows that Y.V.Z. was mistreated by Huamani not because of her membership in a social group, but rather because of "purely personal reasons," viz., his personal, aberrant desire to become Y.V.Z.'s boyfriend.

## 2. Y.V.Z. faces persecution by Huamani on account of her political opinion that she deserves to be free from violence and harm.

Y.V.Z. argues that the IJ and the BIA erred in holding that she was not persecuted by Huamani on account of her political opinion, viz., her opinion that she deserves to be free from harm and violence. She further argues that Huamani imputed that political opinion to her.

In order to prevail on an asylum or withholding of removal claim based on political opinion, "an alien must (1) specify the political opinion on which he or she relies, (2) show that he or she holds that opinion, and (3) show that he or she would be persecuted or has a well-founded fear of persecution based on that opinion." *Fatin v. INS*, 12 F.3d 1233, 1242 (3d Cir. 1993). "[P]ersecution may be on account of a political opinion the applicant actually holds or on account of one the [persecutor] has imputed to him." *Lukwago*, 329 F.3d at 181. "In determining whether an asylum applicant was persecuted because of an imputed political opinion, we focus on whether the persecutor attributed a political opinion to the victim, and acted upon the attribution." *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 108 (3d Cir. 2010) (citation and internal quotation marks omitted). "This focus on whether the persecutor (or would-be persecutor) attributes a political view to the victim makes clear that the INA makes motive critical

10

and an asylum applicant must provide some evidence of motive, direct or circumstantial." *Id*. (citation and internal quotation marks omitted).

Even if we assume for argument's sake that Y.V.Z.'s desire to be free from harm and violence is an expression of a political opinion, there is no evidence in this record to show that Huamani knew of that political opinion. Holding a political opinion, without more, is not sufficient to show persecution on account of that political opinion. *Mendez-Barrera v. Holder*, 602 F.3d 21, 27 (1st Cir. 2010). There must be evidence that Huamani knew of Y.V.Z.'s political opinion and that he targeted her because of it. *Id*. As we have said, there is no evidence that Huamani knew about Y.V.Z.'s assumed political opinion or that he targeted her because of it. Rather, as noted above, Huamani mistreated Y.V.Z. for purely personal reasons, viz.. his desire to be her boyfriend.

### 3. Y.V.Z. is entitled to relief under the CAT.

Y.V.Z. argues that the IJ and the BIA erred by holding that she has not established that she has been or would likely be tortured by Huamani by or with the acquiescence of a government official. Her argument is based on her contention that even after she made a report to the police about Huamani's actions towards her, he continued to threaten, taunt and inflict violence on her. In her view, that constitutes "willful blindness" on the government's part. We disagree.

In *Valdiviezo-Galdamez II*, Valdiviezo-Galdamez filed five police reports about the criminal gang's violent efforts to recruit him, with no tangible results. 663 F.3d at 610. We noted that the BIA found that a lack of tangible results after the filing of the five reports was insufficient to show that the government was willfully blind or

11

acquiesced to the criminal gang's activities. *Id*. We also held that the BIA's conclusion was a reasonable inference that could be drawn from the record. *Id*.

Thus, it is clear that failure to act on a single police report cannot rise to the kind of governmental acquiescence of willful blindness that is needed to support a claim under the CAT.

## V. CONCLUSION

For all of the above reasons, we will deny the petition for review.