# United States Court of Appeals
## For the First Circuit

No. 11-1419

JOSE MAURICIO BELTRAND-ALAS,

Petitioner

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Randy Olen on brief for petitioner.
Daniel E. Goldman, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, Department of Justice, Tony West, Assistant Attorney General, Civil Division, Ada E. Bosque, Senior Litigation Counsel, Office of Immigration Litigation, and Andrew B. Insegna, Trial Attorney, on brief for respondent.

August 17, 2012

**LYNCH**, <u>**Chief Judge**</u>.  Jose Mauricio Beltrand-Alas petitions for review of a March 22, 2011, decision by the Board of Immigration Appeals (BIA), which affirmed the decision of an Immigration Judge (IJ) denying his application for withholding of removal.  We deny the petition for review.

I.

Beltrand-Alas is a native and citizen of El Salvador.  He unlawfully entered the United States in December 2003.  On April 25, 2006, the Department of Homeland Security began removal proceedings by filing a Notice to Appear with the immigration court, charging Beltrand-Alas with removability as an alien present in the United States without being admitted or paroled, and for being present in the United States without a valid immigrant visa.  See 8 U.S.C. § 1182(a)(6)(A)(I); id. § 1182(a)(7)(A)(i)(I).  Beltrand-Alas admitted the factual allegations, conceded removability, and requested relief in the form of political asylum and withholding of removal.  In the alternative, Beltrand-Alas requested voluntary departure.

The IJ held Beltrand-Alas's merits hearing on September 16, 2009.  Beltrand-Alas testified that he was born in Chalatenango, El Salvador.  He further testified that his brother, Salvador, belonged to a gang and that an individual named Ulysses made attempts to get Salvador to join his gang.  Beltrand-Alas advised Salvador against joining Ulysses's gang, prompting Ulysses,

-2-

at gun point, to threaten to kill Beltrand-Alas. That same year, Beltrand-Alas's brother Salvador was murdered by unknown persons. The family left their home, and Beltrand-Alas's sister believed someone from Ulysses's group was following her. Beltrand-Alas left El Salvador approximately one year after his brother's death.

Beltrand-Alas testified that he fears returning to El Salvador because he believes that other members of Ulysses's gang will seek retribution against him. His nephew was murdered in 2008, and Beltrand-Alas testified that he believed Ulysses's gang was responsible.

The IJ found that Beltrand-Alas's testimony was credible, but that the application for political asylum was untimely. Beltrand-Alas's explanations for the untimely application were inadequate to qualify for an exception to the one-year filing deadline.

The IJ also found that Beltrand-Alas was not a victim of past persecution and further found that Beltrand-Alas had not met his burden of showing persecution, a well-founded fear of persecution, or a clear probability of persecution on account of a statutorily protected ground. Additionally, the IJ found that Beltrand-Alas did not establish himself to be a member of a particular social group and that Beltrand-Alas's fear of harm was not centrally based upon an actual or implied protected ground. Although Beltrand-Alas did not raise a claim for protection under

the Convention Against Torture (CAT), the IJ found that Beltrand-Alas failed to establish that it would be more likely than not that he would be tortured upon returning to El Salvador, and that the torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or someone acting in an official capacity. The IJ granted Beltrand-Alas voluntary departure.

Beltrand-Alas appealed only the IJ's denial of withholding of removal, and the BIA, finding no error, dismissed the appeal. The BIA agreed with the IJ that Beltrand-Alas did not show a nexus between any alleged harm and a protected ground. The BIA explained that opposition to gangs does not generally create the basis for a particular social group, and that even if the proposed social group existed, Beltrand-Alas was targeted because of a personal dispute with a gang member, not on account of a protected ground. The BIA rejected Beltrand-Alas's argument that his open and public opposition to gangs made his proposed social group "socially visible," explaining that social visibility is not about a readily perceivable trait, but whether society-at-large conceptualizes individuals with that trait -- whether readily perceivable or not -- as a concrete, identifiable group. Finally, the BIA concluded that Beltrand-Alas was not a member in the particular social group of "returning expatriates from the United States" because he had submitted no evidence that such a group

-4-

exists in El Salvador or that people returning from the United States are targeted.

On April 15, 2011, Beltrand-Alas petitioned this court for review of the BIA's decision.

II.

Where the BIA agrees with and affirms the IJ's result, while adding additional justifications, as here, we review both the BIA's and IJ's opinions. Nako v. Holder, 611 F.3d 45, 48 (1st Cir. 2010); Settenda v. Ashcroft, 377 F.3d 89, 92-93 (1st Cir. 2004).

We decide petitions for review based on the administrative record that is the basis of the agency's findings, 8 U.S.C. § 1252(b)(4)(A), and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," id. § 1252(b)(4)(B). We accept agency findings of fact "that are supported by substantial evidence on the record as a whole." Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011)(citing INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). We review the agency's conclusions of law de novo. Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010). We give "some deference to the agency's founded interpretation of statutes and regulations that it administers." McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011).

Withholding of removal protects an otherwise removable alien from removal to a country where "the alien's life or freedom

would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The BIA has described the term "particular social group" as a group of persons sharing a common, immutable characteristic that makes the group socially visible and sufficiently particular, In re C-A-, 23 I. & N. Dec. 951, 955-57 (BIA 2006); see also Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009), a delineation that we have upheld as reasonable, see Mendez-Barrera, 602 F.3d at 25-26.

Beltrand-Alas bears the burden of showing it is more likely than not that he will suffer persecution on account of one of the five protected grounds if removed to El Salvador. Makalo v. Holder, 612 F.3d 93, 96 (1st Cir. 2010). A showing of past persecution in the proposed country of removal on account of one of the five statutory grounds creates a rebuttable presumption that persecution is likely. 8 C.F.R. § 1208.16(b)(1)(i); Viela v. Holder, 620 F.3d 25, 28 (1st Cir. 2010). Furthermore, under the REAL ID Act of 2005, Beltrand-Alas bears the burden of showing that one of the five protected grounds was or will be at least "one central reason" for his persecution.[1] 8 U.S.C. § 1158(b)(1)(B)(i); see also id. § 1231(b)(3)(C).

---

[1] The REAL ID Act of 2005 is applicable to Beltrand-Alas because he submitted his application for withholding of removal after the May 11, 2005, effective date of the Act. See 8 U.S.C. § 1158 note (Effective Date of 2005 Amendment); Díaz-García v. Holder, 609 F. 3d 21, 27 (1st Cir. 2010).

-6-

Substantial evidence supports the agency's determination that Beltrand-Alas failed to show that it is more likely than not that, if removed to El Salvador, he would suffer persecution on account of his membership in a particular social group or on account of political opinion.  Our precedents foreclose Beltrand-Alas's claim that he will be subjected to persecution on account of his membership in the group of persons who oppose gangs or in the group of persons of perceived wealth.  Furthermore, Beltrand-Alas failed to meet the burden of producing evidence that he was or will be targeted on account of a political opinion.

In Garcia-Callejas v. Holder, 666 F.3d 828 (1st Cir. 2012), this court noted that it has decided a number of cases that have rejected the argument that people who oppose gang membership or recruitment are members of a particular social group.  Id. at 830. In Mendez-Barrera, we held that young El Salvadoran women who resist gang recruitment are not a legally recognized social group because the proposed group lacks social visibility and is not sufficiently particular.  602 F.3d at 26-27.  Like in Mendez-Barrera, Beltrand-Alas has not pinpointed any group characteristic that renders the members of the proposed group socially visible.  Id. at 26.  We have also rejected the argument that those who expressly oppose gangs are sufficiently visible.  In Mendez-Barrera, we stated, "[t]he relevant inquiry is whether the social group is visible in the society, not whether the alien herself is

visible to the alleged persecutors." <u>Id.</u> at 27. Thus, the argument fails.

Beltrand-Alas argues that in light of <u>Judulang</u> v. <u>Holder</u>, 132 S. Ct. 476 (2011), the BIA's use of "social visibility" in the social group analysis is an arbitrary and capricious interpretation of the statute. However, <u>Judulang</u> is inapposite to this case as it involved a different statutory provision and did not involve an agency's interpretation of any statutory language. <u>See</u> <u>id.</u> at 484 n.7. By contrast, this court has held that the social visibility criterion is reasonable because "it represents an elaboration of how th[e] requirement operates," <u>Mendez-Barrera</u>, 602 F.3d at 26, and is an interpretation of an ambiguous statutory term, <u>id.</u> at 25-26 (citing <u>Chevron U.S.A. Inc.</u> v. <u>Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)). <u>Judulang</u> does not alter that analysis.

We have also noted that we have rejected proposed social groups "based solely on perceived wealth, even if signaling an increased vulnerability to crime," <u>Garcia-Callejas</u>, 666 F.3d at 830, regardless of why one is perceived as wealthy, <u>see</u> <u>Sicaju-Diaz</u> v. <u>Holder</u>, 663 F.3d 1, 3-4 (1st Cir. 2011). Beltrand-Alas's argument that he would likely be subject to persecution because he may be deemed wealthy because of his status as a returning expatriate from the United States fails. "In a poorly policed country, rich and poor are all prey to criminals who care nothing

more than taking [property] for themselves." Id. at 4. Beltrand-Alas's own testimony that the police did not protect anyone from gangs provides substantial support for the BIA's finding that this proposed social group is not a cognizable one. Nor did any testimony establish any evidence that expatriates are targeted in El Salvador.

Substantial evidence supports the finding that Beltrand-Alas was not targeted on account of a political opinion. In Arévalo-Girón v. Holder, 667 F.3d 79 (1st Cir. 2012), we observed that greed was the motivating force for gangs. Id. at 83. Gangs, like guerillas and common criminals, are "apt to resort to violent means to accomplish their goals, and it is the alien's burden to give the adjudicator some basis for differentiation in a given case." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). Beltrand-Alas's testimony that Ulysses threatened him because he advised his brother against joining the gang and that Ulysses was trying to make more money as a member of the gang confirms such reasoning.

Because there was no error in the BIA's determination discussed above, it is unnecessary to review Beltrand-Alas's claim that the agency erred in determining that he did not suffer past persecution. The failure to demonstrate a nexus between the alleged harm and a protected ground is fatal to the claim.

Accordingly, we deny Beltrand-Alas's petition for review.