HOWARD, Circuit Judge
(concurring).
While I concur in the judgment, I do not endorse the court’s critiques of the social visibility test, which we have recently and unreservedly rejected, see, e.g., Beltrand-Alas v. Holder, 689 F.3d 90, 93 (1st Cir.2012). Nor can I discern any reason to entertain such criticisms anew, given that they have no impact on the outcome in this case. Thus, I decline to join the majority’s dicta on this nonessential matter.
I.
The validity of the BIA’s social visibility test is not an issue of first impression in this circuit. We have on multiple occasions addressed the viability of the social visibility criterion, and rejected the very arguments by which the majority has been persuaded here. See, e.g., id. (“[The petitioner] argues that ... the BIA’s use of ‘social visibility’ in the social group analysis is an arbitrary and capricious interpretation of the statute ... [but] this court has held that the social visibility criterion is reasonable because it represents an elaboration of how the requirement operates and is an interpretation of an ambiguous statutory term.”) (internal quotation marks omitted); Mendez-Barrera v. Holder, 602 F.3d 21, 26 (1st Cir.2010)(“[T]he petitioner asserts that we should ignore [the BIA’s delineation of the term ‘social group’] because ... the BIA departed from precedent, gutted its immutable characteristic test, and substituted a new (and unprecedented) social visibility test. This assertion contains more cry than wool.... The social visibility criterion ... represents an elaboration of how [the immutable characteristic] requirement operates. We have found this elaboration to be not only reasonable but also within the BIA’s purview.”); Scatambuli v. Holder, 558 F.3d 53, 59-60 (1st Cir.2009)(examining the contours of the BIA’s social visibility test and finding that “it is relevant to the particular social group analysis”).
We are not alone in this view. A multitude of other circuits have similarly concluded that the BIA’s interpretation of “social visibility” is reasonable and therefore entitled to Chevron deference. See Orellana-Monson v. Holder, 685 F.3d 511, 519-20 (5th Cir.2012); Rivera-Barrientos v. Holder, 666 F.3d 641, 648 (10th Cir.2012); Al-Ghorbani v. Holder, 585 F.3d 980, 991, 994 (6th Cir.2009); Ramos-Lopez v. Holder, 563 F.3d 855, 858-62 (9th Cir.2009); Davila-Mejia v. Mukasey, 531 F.3d 624, 628-29 (8th Cir.2008); Ucelo-Gomez v. Mukasey, 509 F.3d 70, 73-74 (2d Cir.2007) (per curiam); Castillo-Arias v. U.S. Att’y Gen., 446 F.3d 1190, 1197-98 (11th Cir.2006).
Only the Third and Seventh Circuits have expressly declined to apply the BIA’s framework. See Valdiviezo-Galdamez v. Att’y Gen., 663 F.3d 582, 603-09 (3d Cir.2011); Gatimi v. Holder, 578 F.3d 611, 615-17 (7th Cir.2009). The majority aptly sets forth the reasoning of those courts, and I need not belabor the point here. At bottom, they have narrowly construed “so *84 cial visibility,” as applied by the BIA, to mean that “you can be a member of a particular social group only if a complete stranger could identify you as a member if he encountered you in the street, because of your appearance, gait, speech pattern, behavior or other discernible characteristic.” Ramos v. Holder, 589 F.3d 426, 430 (7th Cir.2009); see also Valdiviezo-Galdamez, 663 F.3d at 603-09. Consequently, they rejected the test after concluding that this “immediate identifiability” requirement was inconsistent with a line of unrepudiated BIA cases finding social groups based on physical traits that are generally “invisible.” See id.
I see no need to interpret social visibility so narrowly. The seminal BIA decision establishing the test, Matter of C-A-, recognized numerous traits as socially visible that are not immediately apparent to the naked eye, including opposition to genital mutilation, kinship ties, and prior employment as a police officer. See 23 I. & N. Dec. 951, 959-61 (BIA 2006). As the Tenth Circuit has succinctly explained,
if opposition to genital mutilation, kinship ties, and prior employment as a police officer are socially visible, social visibility cannot be read literally. Rather, social visibility requires that the relevant trait be potentially identifiable by members of the community, either because it is evident or because the information defining the characteristic is publically accessible.
Rivera-Barrientos, 666 F.3d at 652.
Our application of the social visibility test comports with that understanding: social visibility does not demand that the relevant trait be externally visible or otherwise immediately identifiable. We have held that to satisfy the social visibility test, a group need only “be generally recognized in the community as ... cohesive.” Mendez-Barrera, 602 F.3d at 26. The term “recognized” should not be conflated with the physical visibility of the targeted immutable characteristic; it is not an “eyeball” test. See id. Thus, it matters not whether, as stated in Valdiviezo-Galdamez, the trait is “completely internal to the individual and cannot be observed or known by other members of the society in question ... unless and until the individual member chooses to make that characteristic known,” 663 F.3d at 604; rather, we consider only whether, if that characteristic were known, those who exhibit it— regardless of its visibility to the casual passerby — comprise a group that would be identified by their society as sufficiently cohesive. See Mendez-Barrera, 602 F.3d at 26 (“The relevant inquiry is whether the social group is visible in the society, not whether the alien herself is visible to the alleged persecutors.”); Faye v. Holder, 580 F.3d 37, 41-42 (1st Cir.2009)(finding that the petitioner’s proposed social group of “adulterers who had a child out of wedlock” was not socially visible, not due to the absence of some externally visible trait, but because the petitioner “did not explain how Senegalese society generally would perceive her and women in a similar position”). Accordingly, the social visibility requirement — as both the BIA and this circuit have applied it — does not necessarily exclude groups whose members might have some measure of success in hiding their status in an attempt to escape persecution.[7]
*85 II.
Even assuming for argument’s sake that the social visibility test has been inconsistently or unreasonably interpreted by the BIA, this petitioner’s claim fails. The social group that he proposes — “persons who have lengthy residence in the United States and are parents of a United States citizen” — is merely a particularized description of “perceived wealth,” a trait which the BIA and several courts of appeals, including the Third and Seventh Circuits, rejected as an immutable characteristic long before the social visibility test was ever formulated. See, e.g., Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 672 (7th Cir.2005); Jimenez-Mora v. Ashcroft, 86 Fed.Appx. 527, 531 (3d Cir.2004); Matter of S-V-, 22 I. & N. Dec. 1306, 1310 (BIA 2000)(holding that actions motivated by “perceived wealth”, were insufficient, without more, to support a finding of persecution based on membership in a particular social group), overruled on other grounds by Zheng v. Ashcroft, 332 F.3d 1186 (9th Cir.2003); Matter of V-T-S-, 21 I. & N. Dec. 792, 799 (BIA 1997) (same). In other words, removing the social visibility test from the equation would not salvage the petitioner’s case, obviating any need to reconsider this circuit’s well-settled precedent.
III.
In the end, my concern is that the dicta in the majority opinion may encourage what I believe will be misplaced challenges to the BIA’s social visibility requirement. We have repeatedly found that requirement to be sound, and the majority’s discussion is not a reflection, institutionally, of the view of this court.

. There is a class of cases in which the conduct of a petitioner, due to its clandestine or confidential nature, was deemed insufficiently visible. See, e.g., Scatambuli v. Holder, 558 F.3d 53, 60 (1st Cir.2009)(rejecting "informants” as a particular social group because "the universe of those who knew of the petitioners’ identity as informants was quite small; the petitioners were not particularly visible”); Matter of C-A-, 23 I. & N. Dec. 951, *85 960 (BIA 2006) (rejecting "confidential informants” as a particular social group on the basis that members are "generally out of the public view”). It makes sense that such individuals, who act in secrecy with no definable common group goal would not be thought to be members of a sufficiently cohesive group. Those cases do not stand for the proposition that an immutable characteristic must be externally or immediately ascertainable to meet the social visibility standard.