# United States Court of Appeals
## For the First Circuit

No. 23-1799

PATRICIA MARILY LEMUS-AGUILAR,

Petitioner,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Kayatta and Gelpí, Circuit Judges.

Kristian Robson Meyer, with whom Kevin P. MacMurray and
MacMurry & Associates were on brief, for petitioner.

Tatiana G. Pino, Trial Attorney, Office of Immigration
Litigation, with whom Brian M. Boynton, Principal Deputy Assistant
Attorney General, Civil Division, and Greg D. Mack, Senior
Litigation Counsel, Office of Immigration Litigation, were on
brief, for respondent.

August 12, 2024

**KAYATTA**, **Circuit Judge**.  Patricia Marily Lemus-Aguilar petitions for review of a Board of Immigration Appeals ("BIA") final order of removal.  The BIA affirmed an Immigration Judge's ("IJ") decision that denied Lemus-Aguilar's request for asylum and ordered her removed to El Salvador.  Seeing no error in the agency's underlying conclusion that Lemus-Aguilar failed to establish a nexus between the harm that befell her and any protected ground for asylum, we must deny the petition.  Our reasoning follows.

**I.**

Lemus-Aguilar, a native and citizen of El Salvador, entered the United States near Hidalgo, Texas without inspection or valid entry documents on February 21, 2016.  Later that year, the Department of Homeland Security ("DHS") filed a Notice to Appear with the Immigration Court to begin removal proceedings against her.  See 8 U.S.C. § 1182(a)(7)(A)(i)(I).  On March 3, 2017, Lemus-Aguilar filed an application for asylum.[1]  She otherwise conceded removability as charged.

In her pre-hearing memorandum, Lemus-Aguilar indicated that she sought asylum based on the persecution she suffered and would continue to suffer on account of -- as relevant here -- her

_____

[1] Lemus-Aguilar also sought withholding of removal and protection under the regulations implementing the Convention against Torture ("CAT").  However, she does not petition for review of the IJ or BIA's dismissal of those claims.

- 2 -

membership in the particular social group of "single, Salvadoran mother[s] with no familial protection." She later submitted supporting documents, including her own declaration, a declaration from a female neighbor in El Salvador who was also targeted for extortion by gang members, and a 2017 U.S. Department of State Human Rights Report on El Salvador. She also submitted declarations from various experts on conditions in El Salvador. Those reports described common types of gang violence, including extortion of single women. The reports also described the prevalence of patriarchal cultural norms that often leave women dependent on the men in their households and victims of gender-based violence.

On October 15, 2019, Lemus-Aguilar testified before the IJ at her merits hearing. She testified that she fled El Salvador with her daughter on February 10, 2016, due to "threats by the gangs." She stated that she and her daughter had lived in a town called La Palma, in a home near a field and wooded area where she would observe MS-13 gang members conducting drug deals. A few weeks before she left the country, gang members approached Lemus-Aguilar's house. As Lemus-Aguilar testified, "they wanted [her] to sell drugs, because [she] lived close to the field" and had observed their activities there. According to Lemus-Aguilar, a gang member told her he "had been watching [them]" and therefore knew that hurting her daughter "would be the way to hurt [her] the

- 3 -

most." The gang gave Lemus-Aguilar two days to decide if she would help them sell drugs -- otherwise they would "harm [her] daughter in front of [her]."

When asked why the gang would harm her daughter, Lemus-Aguilar stated it was because her daughter "was the only thing [she] had, the most valuable thing [she] had." She also testified that she believed the gang threatened them because she and her daughter lived alone together and were "vulnerable" to the gang.

Lemus-Aguilar stated that after those two days passed, she told the gang members that she refused to help them. She testified that she then fled -- in fear of the gang's reprisals -- to her father's house in a town some forty minutes away, where she and her daughter hid out for two weeks before leaving for the United States. She also noted that the gangs separately threatened to extort her female neighbor who continues to live in La Palma with her family.

On October 15, 2019, the IJ denied Lemus-Aguilar's asylum claim. The IJ found Lemus-Aguilar credible and genuinely afraid of returning to El Salvador. The IJ also found that the threats Lemus-Aguilar and her daughter received rose to the level of past persecution. However, the IJ found that Lemus-Aguilar failed to show that any past persecution (or well-founded fear of future persecution) was on account of a statutorily protected

ground. That is, the IJ determined that the gang members were motivated to target Lemus-Aguilar "because she refused to comply with their criminal scheme for her to participate and assist in their apparent efforts at drug trafficking and drug distribution." It noted that this court has rejected "resist[ing] gang recruitment" as a protected ground for asylum. See, e.g., Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010) (rejecting a proposed particular social group of "young women recruited by gang members who resist such recruitment"). Thus, the IJ found itself "[un]able to connect [Lemus-Aguilar's] claimed fear to a protected ground."

In so finding, the IJ noted Lemus-Aguilar's argument that she was targeted on account of being a "single, Salvadoran [mother] with no familial protection." However, the IJ found that this was not "one central reason" she was targeted. Rather, she was targeted because of her home's proximity to an area where the gang conducted drug deals, and because of her knowledge of those activities. Additionally, the IJ found that Lemus-Aguilar's proposed particular social group was not legally cognizable because it was insufficiently particular. The IJ found that Lemus-Aguilar's proposed group "preclude[d] determinacy" because the definition of "familial protection" was unclear, as the record showed that Lemus-Aguilar herself was able to seek help from her father when fleeing La Palma. Consequently, given Lemus-Aguilar's

- 5 -

failure to put forward a cognizable particular social group, and the lack of evidence that she was targeted on grounds of membership in that group, the IJ concluded that Lemus-Aguilar's asylum claim failed.

The BIA affirmed. First, the BIA agreed with the IJ that Lemus-Aguilar's proposed particular social group was insufficiently particular. It noted that while "mother" and "Salvadoran" may have clear definitions, "no familial protection" is a "subjective term without a clear meaning." The BIA also agreed that it was not clear whether Lemus-Aguilar indeed had "no familial protection." As such, the BIA found that her proposed particular social group lacked the "requisite well-defined boundaries" to be cognizable. Second, the BIA agreed with the IJ that Lemus-Aguilar failed to establish that membership in her proposed social group was a "central reason" for her claimed persecution. To that end, the BIA found that it was unclear to what extent, if any, the individual gang members were even aware that Lemus-Aguilar had no familial protection. Therefore, the IJ's conclusion that the gang instead targeted Lemus-Aguilar for purely extortionary reasons was not clearly erroneous.

Lemus-Aguilar now petitions this court for review. She asserts two points of error. First, she argues that the BIA erred in affirming the IJ's determination that her proposed particular social group is not legally cognizable. Second, she argues that

the BIA also erred in affirming the IJ's finding that she failed to establish a nexus between that proposed group and the persecution she suffered or fears she will suffer.

## II.

When the BIA adopts and affirms an IJ's decision while adding its own gloss, we review both decisions together. Varela-Chavarria v. Garland, 86 F.4th 443, 449 (1st Cir. 2023). We review legal conclusions de novo and factual findings under the "substantial evidence" standard. López-Pérez v. Garland, 26 F.4th 104, 110 (1st Cir. 2022). Under that standard, we "accept the agency's findings of fact, including credibility findings, as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). In other words, we "only disturb the agency's [factual] findings if, in reviewing the record as a whole, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)).

## III.

We begin and end with Lemus-Aguilar's challenge to the BIA's affirmance of the IJ's determination that she is not eligible for asylum because she failed to establish the requisite nexus

between her past persecution (or well-founded fear of future persecution) and a protected ground. To qualify for asylum, Lemus-Aguilar must establish that she "suffered in the past or has a well-founded fear of suffering in the future 'persecution <u>on account of</u> race, religion, nationality, membership in a particular social group, or political opinion.'" <u>Varela-Chavarria</u>, 86 F.4th at 449 (emphasis added) (quoting 8 U.S.C. § 1101(a)(42)(A)). Thus, even assuming arguendo that "single, Salvadoran mothers with no familial protection" is a cognizable particular social group, Lemus-Aguilar still must show that her membership in that group "was or will be at least one central reason" for her persecution. 8 U.S.C. § 1158(b)(1)(B)(i).

To establish nexus, Lemus-Aguilar need not "demonstrate that [s]he was singled out <u>only</u> due to [her] protected trait." <u>Ordonez-Quino</u> v. <u>Holder</u>, 760 F.3d 80, 90 (1st Cir. 2014). Nor does "the presence of a non-protected motivation" render her ineligible for asylum, <u>Aldana-Ramos</u> v. <u>Holder</u>, 757 F.3d 9, 19 (1st Cir. 2014), for "of course, persecutors may often have more than one motivation," <u>Ordonez-Quino</u>, 760 F.3d at 90 (quoting <u>Ivanov</u> v. <u>Holder</u>, 736 F.3d 5, 15 (1st Cir. 2013)). However, Lemus-Aguilar must show that a protected ground was or will be more than "incidental, tangential, superficial, or subordinate to another reason for [the] harm" in question. <u>Sanchez-Vasquez</u> v. <u>Garland</u>, 994 F.3d 40, 47 (1st Cir. 2021) (quotation omitted).

On this record, we find that substantial evidence supports the IJ and BIA's determination that Lemus-Aguilar's status as a "single, Salvadoran mother with no familial protection" was not a central reason for her persecution. See id. (reviewing a gang's motivation to target the petitioner there under the substantial-evidence standard). Lemus-Aguilar testified that the gang members "wanted [her] to sell drugs, because [she] lived close to the field . . . [a]nd they knew that [she] observed a lot of things." She also testified that the gang members wanted her to "join them to sell drugs, because [she] was an accessible part with them," meaning that she "lived in front of the [field] where they would spend a lot of time" near a "wooded area where they would do their deals." And when asked why the gang members would harm her daughter if she refused their demands, Lemus-Aguilar stated that it was "[b]ecause [her daughter] was . . . the most valuable thing [she] had." Thus, as the IJ found, "the motivation for [Lemus-Aguilar] being targeted was because she refused to comply with [the gang members'] criminal scheme for her to participate and assist in their apparent efforts at drug trafficking and drug distribution." Lemus-Aguilar's brief even concedes that the IJ's nexus finding was "plausible."

The record amply supports the conclusion that Lemus-Aguilar's status as a "single, Salvadoran mother with no familial protection" was "incidental, tangential, superficial, or

subordinate" to the persecutors' principal motivation of recruiting Lemus-Aguilar to assist with their drug-related criminal activities.[2]  Id.  To be sure, we may infer from Lemus-Aguilar's testimony that Lemus-Aguilar's persecutors were aware that she lived alone with her daughter.  But Lemus-Aguilar presents no compelling evidence that the gang members believed her to have no family in the area, or that they were motivated by any deficiency in her familial protection when they decided to target her for their drug-trafficking activities.  See Villalta-Martinez v. Sessions, 882 F.3d 20, 24 (1st Cir. 2018) (finding that the petitioner there failed to show that she was persecuted on account of her relationship with her child's father where she provided no evidence that the gang members "had any knowledge of her relationship with [the father of her child]").  If anything, Lemus-Aguilar's testimony that she sought refuge from the gang with her father in a nearby town only detracts from any claim that she lacked "familial protection," let alone that the gang members targeted her on that basis.

---

[2]  Lemus-Aguilar does not argue that resisting the gang members' recruitment efforts itself constitutes a protected ground for asylum.  In any event, the IJ correctly noted that this argument would likely fail.  See Mendez-Barrera, 602 F.3d at 27; see also Larios v. Holder, 608 F.3d 105, 109 (1st Cir. 2010) (rejecting the proposed social group of "youth resistant to gang recruitment" as insufficiently particular and lacking social visibility).

Additionally, while Lemus-Aguilar presented a declaration from a female neighbor in La Palma whom gang members also targeted for extortion by threatening to harm her family members, no record evidence indicates whether that neighbor shared any characteristics with "single, Salvadoran mothers with no familial protection" or whether the gang targeted her on any such basis. The fact that the gang also targeted Lemus-Aguilar's neighbor for extortion by threatening to harm her family members bolsters the agency's conclusion that the gang was motivated by Lemus-Aguilar's proximity to an area where it conducted criminal activities and a general desire to further those activities. And as for Lemus-Aguilar's country conditions evidence, while her expert reports explain an unfortunate ubiquity of gender-based violence and discrimination in El Salvador, they do little to establish that the MS-13 gang members in La Palma targeted Lemus-Aguilar based on her status as a single Salvadoran mother with no familial protection, as opposed to as a conduit for furthering their drug-trafficking activities.

At bottom, Lemus-Aguilar presents insufficient evidence to "compel a reasonable factfinder to reach a contrary determination" regarding the nexus between the harm she suffered and any statutorily protected ground. Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). As Lemus-Aguilar's failure to

establish this nexus is fatal to her asylum claim, we need go no further.[3]

**IV.**

For the foregoing reasons, we must <u>deny</u> the petition.

---

[3] We therefore do not decide whether the IJ or BIA erred in finding that "single, Salvadoran mothers with no familial protection" is not a legally cognizable particular social group.