**Charlie Rolandy Fouzhie TENDEAN, Petitioner,**

v.

**Alberto R. GONZALES, United States Attorney General, Respondent.**

No. 06–1735.

United States Court of Appeals, First Circuit.

Submitted April 4, 2007.

Decided Sept. 14, 2007.

Andrew P. Johnson, on brief for petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division, with whom M. Jocelyn López Wright, Assistant Director, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, on brief for respondent.

Before TORRUELLA, Circuit Judge. SELYA and TASHIMA,* Senior Circuit Judges.

TASHIMA, Senior Circuit Judge.

Charlie Rolandy Fouzhie Tendean, a native and citizen of Indonesia, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Tendean argues that the BIA erred in concluding that he was ineligible for asylum and did not merit withholding of removal or CAT relief. We deny the petition for review.

Tendean entered the United States as a nonimmigrant visitor in May 2003. After overstaying his visa, Tendean filed an application for asylum and withholding of removal in May 2004. Tendean was subsequently placed in removal proceedings, where he conceded removability and re-

---

* Of the Ninth Circuit, sitting by designation.

newed his application for asylum, withholding of removal, and CAT protection. After a hearing in March 2005, an IJ denied Tendean's application in an oral decision and ordered his removal. The BIA dismissed Tendean's appeal of the IJ's decision on April 10, 2006.

In his asylum application and at the hearing before the IJ, Tendean maintained that he had been persecuted in his native Indonesia on account of his father's election as the chief of the village of Kayuroya, and that the persecution would continue if he were removed to Indonesia. At the time of the alleged persecution, during 2002 and 2003, Tendean was twenty years old and had recently returned to Kayuroya, a village of about 600 people, after attending school in another city for a number of years. In Kayuroya, Tendean lived with his family and worked on the family farm.

According to Tendean, after his father won the hotly contested election for chief in Kayuroya, Tendean's family experienced various acts of harassment. Supporters of the opposing candidate claimed that his father should resign and that the election was illegal. These individuals gathered outside the Tendeans' home on a near-nightly basis for weeks after the election, shouting insults and throwing stones. The opponent's supporters threatened that if his father did not resign, they would do more than throw stones and there would never be peace in the village. Eventually, they razed the bushes and fence around the Tendeans' house, set fire to the family farm, and contaminated the family well. Tendean's father reported these events to the local police. Although the police investigated, nothing resulted from the investigation.

Tendean testified that even after his father resigned in February of 2003, supporters of his father's opponent continued to gather outside the house and yell for his father to leave the village. According to Tendean, his family lived in constant fear due to these events. Tendean claimed that he believed the supporters of his father's political opponent would find him if he returned to Indonesia, and that he feared they would kill him.

The IJ denied relief on the ground that, although he found Tendean's testimony "candid and worthy of belief concerning what happened to his family," he did not accept Tendean's conjecture that he could not reside anywhere else in Indonesia. The BIA affirmed the IJ's decision. First, the BIA found that "the actions the individuals took against the respondent's family—including throwing stones at their home, yelling insults outside their home, burning the family farm, and tainting their well—were not so severe as to rise to the level of past persecution." Second, the BIA found that Tendean had not established a well-founded fear of future persecution if he were to return to Indonesia, as the incidents he reported occurred only within his village and he could reasonably be expected to relocate outside his village.

We review the BIA's decision regarding Tendean's eligibility for asylum under the "substantial evidence" standard, and will uphold the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Carcamo–Recinos v. Ashcroft,* 389 F.3d 253, 256 (1st Cir.2004) (citation and internal quotation marks omitted). We may reverse the BIA only if the evidence compels that result. *Id.; see also* 8 U.S.C § 1252(b)(4)(B).

An applicant for asylum bears the burden of establishing his eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B). To be eligible, the applicant must qualify as a refugee; this requires a showing that he

"is unable or unwilling to return to ... [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(A). The applicant can meet this burden by: (1) showing past persecution, which creates a rebuttable presumption of a well-founded fear of persecution, or (2) establishing a well-founded fear of future persecution. *Carcamo–Recinos,* 389 F.3d at 257. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." *Nelson v. INS,* 232 F.3d 258, 263 (1st Cir.2000).

Even if an applicant successfully demonstrates past persecution, his asylum application will be denied if it is shown by a preponderance of the evidence that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country ... and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(1)(i)(B).

■ In this case, we need not reach the question of whether the events described by Tendean rise to the level of past persecution: Even assuming that Tendean has shown past persecution, substantial evidence supports the BIA's findings that Tendean can avoid future persecution by relocating to an area outside his former village of Kayuroya, and that it is reasonable to expect Tendean to do so. The troubling events that Tendean described occurred only in Tendean's very small home village of Kayuroya, and there is no evidence that his father's political opponent's supporters have any capacity or inclination to pursue Tendean outside of the village. Tendean testified that sometime after he came to the United States, his family moved to a village only several kilometers away from Kayuroya, and he does not allege that his family has suffered any threats or other harassment since moving. "[I]f a potentially troublesome state of affairs is sufficiently localized, an alien can avoid persecution by the simple expedient of relocating within his own country instead of fleeing to foreign soil." *Silva v. Ashcroft,* 394 F.3d 1, 7 (1st Cir. 2005). There is no sign that Tendean or his family faced any risk outside of Kayuroya.

Also, there is every indication that it would be reasonable for Tendean to live outside of Kayuroya, as his family has already departed for a nearby village and Tendean himself is young and single. In fact, Tendean has already lived for a number of years in another city in Indonesia while he was pursuing his schooling. *See* 8 C.F.R. § 1208.13(b)(3) (factors that may be relevant to reasonableness of internal relocation include, among others, possibility of harm in suggested place of relocation, and "age, gender, health, and social and familial ties"). Thus, even assuming that Tendean has demonstrated that he suffered past persecution, the fact that he can safely relocate within Indonesia defeats his asylum application. *Id.* § 1208.13(b)(1)(i)(B).

Insofar as Tendean has failed to show that he is eligible for asylum, he necessarily cannot meet the higher standard for withholding of removal. *Jiang v. Gonzales,* 474 F.3d 25, 31 (1st Cir.2007); *see also* 8 C.F.R. § 1208.16(b)(1)(i)(B) (the possibility of internal relocation negates any presumption of eligibility for withholding based on past persecution).

Tendean also seeks relief from removal under the CAT. An alien seeking CAT protection must show that it is more likely than not that he will be tortured if removed to his country. *Id.* § 1208.16(c)(2).

"Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person ... by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). The possibility of internal relocation is relevant in determining whether the applicant has shown that he is likely to be tortured if removed. *Id.* § 1208.16(c)(3)(ii).

 There is ample evidence to support the BIA's determination that Tendean failed to show he is likely to suffer torture if returned to Indonesia. Nothing in the harassment that he described approaches torture, and there is no evidence that any public official instigated or acquiesced in the harassment of Tendean's family.[1] Further, as we have noted, the BIA's finding that Tendean may safely relocate within Indonesia is supported by substantial evidence.

For the reasons given above, we uphold the BIA's determination that Tendean failed to show eligibility for asylum, withholding of removal, or CAT protection.

*The petition for review is denied.*

---

1. Although it is unclear whether Tendean's father's opponent for village chief instigated or acquiesced in the harassment by his supporters, the opponent did not assume the position of village chief upon Tendean's father's resignation, and apparently holds no government post.