# United States Court of Appeals
## For the First Circuit

No. 18-1314

JAIME EDUARDO URGILEZ MENDEZ,

Petitioner,

v.

MATTHEW G. WHITAKER,
ACTING ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Barron and Selya, Circuit Judges,
and Katzmann, Judge.[**]

Glenn L. Formica, Elyssa N. Williams, and Formica Williams, P.C. on brief for petitioner.
Chad A. Readler, Acting Assistant Attorney General, Civil Division, Keith I. McManus, Assistant Director, Office of Immigration Litigation, and Rosanne M. Perry, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Matthew G. Whitaker has been substituted for former Attorney General Jefferson B. Sessions, III as the respondent.

[**] Of the United States Court of International Trade, sitting by designation.

December 11, 2018

**SELYA**, **Circuit Judge**.  The petitioner, Jaime Eduardo Urgilez Mendez, is an Ecuadorian national.  He seeks judicial review of an order of the Board of Immigration Appeals (BIA) dismissing his application for asylum.[1]  After careful consideration, we deny his petition.

The relevant facts are straightforward.  On April 19, 2013, the petitioner entered the United States illegally at Laredo, Texas.  In short order, the Department of Homeland Security initiated removal proceedings against him.  The petitioner conceded removability and applied for asylum.  He premised his asylum application on a claim that he had been persecuted in the past (and, thus, feared future persecution) by gang members on account of his political opinion and/or membership in a particular social group.

At a hearing held before an immigration judge (IJ) on April 12, 2017, the petitioner testified that while in Ecuador, he had surreptitiously gone to the police to report gang activity in his town.  Specifically, he told the police that gang members were extorting money from his family and other community members.  The record contains nothing that would indicate that either the

---

[1] The petitioner also unsuccessfully applied for withholding of removal and protection under the United Nations Convention Against Torture.  In his petition for judicial review, however, he challenges only the dismissal of his asylum application.  Consequently, we make no further reference to the other forms of relief that the petitioner originally sought.

- 3 -

petitioner's views about gang activity or his role as an informant were known outside of official circles. By the same token, the record contains no hint that the petitioner voiced his accusations publicly.

Sometime in 2004 — the record is tenebrous as to how much time elapsed after the petitioner's private conversations with the police — the petitioner was stabbed by a gang member known as "Shaggy." His injuries required significant medical treatment, and the attack left the petitioner emotionally traumatized. When asked what prompted the assault, the petitioner expressed uncertainty. He eventually speculated that "maybe it could have been because I had gone to the police." And even though he had approached the police in secret, he ruminated that "maybe [Shaggy] knew." This suspicion apparently derived from the petitioner's unsubstantiated belief that "the police and the gangs work together."

The petitioner related that, subsequent to the stabbing incident, he was interviewed by a local prosecutor. To his knowledge, though, no action was taken against Shaggy. Once again, the record contains nothing to indicate that either the fact of the petitioner's meeting with the prosecutor or the contents of their discussion was known outside the prosecutor's office.

This was not the end of the matter. The petitioner asserted that Shaggy continued to threaten him by leaving notes

and spray-painting messages on his house. But no further confrontation occurred until 2008, when the petitioner was again attacked by unidentified persons, whom he suspected to be gang members. This attack left him with a scar on his face. Asked to explain why he had been attacked, the petitioner was unable to offer any explanation.

At the conclusion of the hearing, the IJ expressed grave reservations about the petitioner's credibility but nonetheless assumed that his testimony was credible. Even on this arguendo assumption, the IJ rejected the petitioner's request for asylum. Critically, the IJ determined that the petitioner had failed to establish a nexus between the harm that he described and any statutorily protected ground for asylum status. In the IJ's view, the violence that the petitioner experienced was likely the consequence of personal retaliation or retribution.

The petitioner appealed, but the BIA upheld the IJ's findings. In its decision, the BIA pointed out that the petitioner had shifted gears and had proffered a new definition of the social group to which he belonged: state witnesses against criminals in Ecuador. The BIA noted that it "generally does not consider new definitions proposed for the first time on appeal." Here, however, the BIA opted to consider the petitioner's new definition, but still found his asylum claim wanting on lack-of-nexus grounds. This timely petition for judicial review followed.

Although judicial review in immigration cases generally focuses on the final decision of the BIA, a different rule applies when the BIA embraces the IJ's decision but adds its own gloss. In such circumstances, judicial review focuses on the two decisions as a unit. See Perez-Rabanales v. Sessions, 881 F.3d 61, 65 (1st Cir. 2018). This is such a case.

Judicial review of the denial of asylum is deferential. See 8 U.S.C. § 1252(b)(4)(B). In conducting this tamisage, we examine factbound challenges only to ensure that the agency's factual findings are supported by substantial evidence in the administrative record as a whole. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). This agency-friendly standard requires us to accept the agency's findings "unless the record is such as would compel a reasonable factfinder to reach a contrary determination." Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010). Put another way, the denial of asylum must be affirmed unless the administrative record "unequivocally indicates error." Makhoul, 387 F.3d at 79 (citing Elias-Zacarias, 502 U.S. at 481 & n.1).

Against this backdrop, we turn to the particulars of the case at hand. To begin, an asylum-seeker must establish that he is a refugee. See 8 U.S.C. § 1158(b)(1). A refugee is someone who cannot or will not return to his homeland "because of persecution or a well-founded fear of persecution on account of

- 6 -

race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). A credible showing of past persecution creates a rebuttable presumption that the asylum-seeker has a well-founded fear of future persecution. See Mendez-Barrera, 602 F.3d at 25.

In this context, "[p]ersecution is a protean term, not defined by statute." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). Nevertheless, our case law makes manifest that there is a floor: persecution requires something "more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Mendez-Barrera, 602 F.3d at 25 (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)). For present purposes, we assume that the type and quantum of harm described by the petitioner — a stabbing that resulted in substantial injury and medical treatment — was sufficient to cross this threshold.

A finding that the petitioner suffered a level of harm sufficient to constitute persecution does not end the asylum inquiry. To gain asylum, the petitioner must also establish that the harm was inflicted "on account of" one or more of the five statutorily enumerated grounds: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). This "on account of" element is "commonly referred to as the nexus requirement." Alvizures-Gomes v. Lynch, 830 F.3d 49, 52-53 (1st Cir. 2016). To satisfy it, the petitioner

— who bears the burden of proof — must show by probative evidence, see Lopez de Hincapie, 494 F.3d at 218, that the enumerated ground on which his asylum application hinges was "at least one central reason" for the harm that he endured, 8 U.S.C. § 1158(b)(1)(B)(i). The Supreme Court has emphasized that proving the required nexus is "critical" to an asylum-seeker's success.[2] Elias-Zacarias, 502 U.S. at 483.

The petitioner first tries to superimpose his asylum claim onto this framework by alleging past persecution and a well-founded fear of future persecution based on political opinion (specifically, his imputed political opinion in "opposition to lawbreakers"). In his view, reporting gang activity to local authorities amounted to an expression of a protected political opinion against lawbreakers. This boils down to a suggestion that by being an informant, he necessarily expressed a political opinion. Both the IJ and the BIA rejected this suggestion. So do we.

---

[2] There is, of course, a further requirement for asylum: the alleged persecution not only must be causally connected to a statutorily enumerated ground but also must be "the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct." Nikijuluw, 427 F.3d at 121. Because the petitioner has failed to satisfy the nexus requirement, see text infra, it is unnecessary for us to consider whether he has satisfied the "government action" requirement.

The petitioner's thesis suffers from a series of related flaws: his reports to the authorities were made in secret, his role as an informant was never publicly disclosed, and nothing in the record indicates that he divulged information to the authorities in order to express a political opinion. To impute a political opinion premised on an individual's holding of that opinion, we have required, at a minimum, "evidence that the would-be persecutors knew of the [political] beliefs and targeted the belief holder for that reason." Mendez-Barrera, 602 F.3d at 27 (emphasis in original). Here, no evidence in the record supports — let alone compels — a reasonable inference that the petitioner's private conversations with the authorities were publicly disseminated, "leaked," or otherwise made known to Shaggy.

Another point is worth making. "Because people report criminal conduct to law enforcement for various reasons," we have declined to impute a political opinion based on a statement to the police without some evidence that the statement was made to express a political opinion. Amilcar-Orellana v. Mukasey, 551 F.3d 86, 91 (1st Cir. 2008). There is no such evidence here: the record indicates that the petitioner went to the police to stop gang members from extorting money from his family and his neighbors, not for any other purpose.

This ends this aspect of the matter. Given the porous foundation for the petitioner's "political opinion" claim, it is

unsurprising that the IJ and the BIA determined that the petitioner failed to carry his burden of proving the required nexus. On this record, the petitioner's unsupported speculation that Shaggy targeted him because of his political opinion is entitled to little weight.[3] After all, divulging information in private is not a typical way in which to make a public expression of a political opinion. See Amilcar-Orellana, 551 F.3d at 91.

The petitioner has a fallback argument. He alleges past persecution based on his membership in a particular social group: those who act as state witnesses against criminals in Ecuador. This argument, too, lacks force.

To establish a right to asylum on the basis of membership in a social group, an alien must demonstrate that the group was socially visible; that its members share the same immutable characteristic; and that the group be sufficiently particular. See Perez-Rabanales, 881 F.3d at 65; Alvizures-Gomes, 830 F.3d at 54; Scatambuli v. Holder, 558 F.3d 53, 59 (1st Cir. 2009). In the BIA's estimation, the petitioner's claim ran aground due to a lack of visibility. We agree.

---

[3] The petitioner's argument is all the more speculative because — as the BIA indicated — the record is consistent with a conclusion that the stabbing was a personal attack on the petitioner. Our cases make pellucid that immigration laws are "not intended to protect aliens from violence based on personal animosity." Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004).

As said, the petitioner claims membership in a social group that he describes as individuals who are state witnesses against criminals in Ecuador. The BIA found, inter alia, that the claim foundered because the petitioner's membership was "based on having secretly informed police of gang activities in his home country." As such, the claim fell "closely" in line with claims previously rejected under the BIA's precedents, see, e.g., In re C-A-, 23 I. & N. Dec. 951 (B.I.A. 2006), "the methodology of which was affirmed in Scatambuli."

To put the BIA's rationale into perspective, we briefly rehearse our decision in Scatambuli. There, we held that the visibility of particular individuals associated with a putative social group is germane to the social group analysis. See Scatambuli, 558 F.3d at 59-60. A member satisfies this standard only if he possesses characteristics "visible and recognizable by others in the [native] country." Id. at 59 (alterations in original) (quoting In re C-A-, 23 I. & N. Dec. at 960). Of particular pertinence, Scatambuli cited approvingly the BIA's observation that, with respect to confidential informants, "the very nature of the conduct at issue is such that it is generally out of the public view." Id. (quoting In re C-A-, 23 I. & N. Dec. at 960). Thus, "visibility is limited to those informants who are discovered." Id. (quoting In re C-A-, 23 I. & N. Dec. at 960).

- 11 -

The BIA's reliance on Scatambuli strikes us as appropriate. In Scatambuli, we upheld the denial of asylum because substantial evidence supported its finding that "the universe of those who knew of the petitioners' identity as informants was quite small." Id. at 60. So it is here. The BIA determined that the petitioner, a self-described secret informant who adduced no evidence that his association with the putative social group was ever disclosed, could not have been perceived within the community as belonging to that group. Since the record does not compel a contrary conclusion, Scatambuli controls — and the rule of that case requires us to uphold the BIA's determination.

In an effort to blunt the force of this reasoning, the petitioner contends that his case is distinguishable from Scatambuli because the aliens there were informants to United States law enforcement whereas the petitioner was an informant to local law enforcement in his homeland. This is a distinction without a difference. Regardless of the sovereign to which an informant's information was divulged, the question is whether the informant lacked visibility. See id. Here, the BIA answered this question in the affirmative, and the record does not "compel a reasonable factfinder to reach a contrary determination." Mendez-Barrera, 602 F.3d at 24. No more is exigible to satisfy the substantial evidence test.

We need go no further.  For the reasons elucidated above, the petition for judicial review is

**Denied**.