# United States Court of Appeals
## For the First Circuit

No. 23-1108

TOMAS CAZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Lipez, and Thompson,
Circuit Judges.

Kristian R. Meyer, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioner.
Marie V. Robinson, United States Department of Justice, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Andrew N. O'Malley, Senior Litigation Counsel, were on brief, for respondent.

October 11, 2023

THOMPSON, **Circuit Judge**. Petitioner Tomas Caz ("Caz"),[1] a member of Ecuador's Quechua indigenous group, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") -- applications which were rejected by an Immigration Judge ("IJ"). He then appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision. Convinced the BIA and IJ got it wrong, Caz filed a petition for review with this court, asking us to reverse the BIA's affirmance and remand his case. Limited by the deferential substantial-evidence standard of review, we deny his petition.

## BACKGROUND

### *Life in Ecuador and Entrance to the United States*[2]

Caz is a native and citizen of Ecuador, born and raised in Riobamba. While his life in Riobamba was, for the most part, uneventful, he was "looked down on" and "discriminated against" for his Quechua heritage, resulting in fewer employment opportunities. Thinking it would be different in a larger city,

---

[1] Caz's name, at times, appears as "Segundo Tomas Caz-Quillay" in the administrative record. We use Tomas Caz because that is the name used in his opening brief.

[2] We draw the facts from the administrative record, including Caz's testimony before the IJ. Adeyanju v. Garland, 27 F.4th 25, 31 (1st Cir. 2022) (citing Martínez-Pérez v. Sessions, 897 F.3d 33, 37 n.1 (1st Cir. 2018)). While the IJ did not find Caz credible, the BIA, in adjudicating his appeal, "assum[ed], without deciding, that [he] testified credibly." Our review of the BIA's decision makes the same assumption.

- 2 -

Caz moved to Guayaquil (about three to four hours from Riobamba) in 2012, when he was about twenty-two years old.

Once there, Caz found work on a banana farm. One day in 2012, however, three of the temporary workers on the farm insulted him, calling him "a small person," "a farmer . . . from the village," and an "Indian." As Caz was leaving work that day, these men attacked him, stole his money, and threatened him by brandishing a firearm and by telling him they would kill him if he returned to work. A second incident occurred months later in mid-2013. On this occasion, the same three workers attacked Caz and threw him down near a river or body of water, causing him to hit his head on a rock when he went down and resulting in trauma to the head. These men then threatened to kill him with a machete if he reported their actions to the authorities.

Following this attack, Caz could no longer work due to his head injury, so he returned to his parents' home in Riobamba to recover. He lived there without incident for about one year. Although Caz never saw his attackers again, these violent incidents convinced him he was not safe in Ecuador, leading to his decision to flee to the United States in November 2014.

Upon his arrival to the United States on December 28, 2014, Caz was issued an expedited removal order. He then expressed a fear of returning to Ecuador and was referred to an asylum officer for a credible fear interview. During the interview, Caz

expressed that he feared harm in Ecuador due to his Quechua heritage. The asylum officer deemed his fear credible and, as such, referred his case to the immigration court for removal proceedings.

### Immigration Proceedings

Fast forward several years. Caz went before the IJ on September 24, 2019, seeking to avoid removal through applications for asylum, withholding of removal, and CAT protection. These applications were principally supported by Caz's testimony, along with his written affidavit, credible fear documents, asylum application, and four country conditions reports.

After hearing Caz's testimony, the IJ issued an oral decision denying all three forms of relief and ordering his removal to Ecuador. In denying asylum, the IJ first found that Caz had not testified credibly, focusing on purported discrepancies relating to the presence of the firearm in the first attack and the nature of his work in Guayaquil.[3] Notwithstanding this adverse credibility finding, the IJ went on to the merits of Caz's asylum claim, concluding that he failed to carry his burden to prove past

---

[3] To be specific, the IJ noted that, in Caz's written affidavit and credible fear documents, he never mentioned a firearm or its use during either attack. The IJ further noted that Caz's written statement indicated he worked in construction while in Guayaquil, not at a banana farm. Reviewing the transcript of Caz's testimony in 2019, it appears that the IJ's rapid, leading questioning of Caz, who was testifying through an interpreter using his second language, Spanish, may have contributed to the inconsistencies.

persecution or a well-founded fear of future persecution. As to past persecution, the IJ determined that the two incidents in Guayaquil did not amount to persecution and, even if they did, the persecution was not on account of his Quechua heritage. As to future persecution, the IJ determined that Caz could not demonstrate a well-founded fear because he could safely relocate within Ecuador, citing Caz's testimony that he relocated to Riobamba following the attacks and did not suffer any further violence. Because Caz could not satisfy the asylum burden, the IJ denied withholding of removal -- a form of relief with a higher burden of proof than asylum. Turning to CAT protection, the IJ denied relief because Caz failed to show it was more likely than not that he would be tortured in Ecuador.

A timely appeal to the BIA followed. On January 11, 2023, the BIA issued a decision dismissing the appeal. While Caz challenged the IJ's adverse credibility finding, the BIA side-stepped the credibility issue entirely, choosing instead to assume Caz testified credibly, then affirming the IJ's denial of relief on the merits. Specifically, the BIA found no error in the IJ's determination that Caz had not shown his Quechua heritage was the motivation behind the attacks. Furthermore, the BIA agreed with the IJ's conclusion that Caz could safely relocate within Ecuador, noting that Caz had not contended it would be unreasonable for him to relocate or otherwise challenged the IJ's internal relocation

- 5 -

finding.  Finally, the BIA noted (and of import to our analysis) that Caz had not meaningfully challenged the IJ's denial of CAT protection and deemed that claim for relief waived.

**DISCUSSION**

Against this factual and procedural backdrop, we turn our attention to the three issues Caz raises to us in his petition for review:  1) the BIA erred in adopting the IJ's adverse credibility finding, a finding which was made (in Caz's view) against the totality of the circumstances; 2) the BIA erred in affirming the IJ's determination that Caz did not suffer past persecution because his attackers were not motivated by his Quechua heritage; and 3) the BIA erred in affirming the IJ's determination that Caz could safely relocate within Ecuador and it would be reasonable for him to do so.  We bypass the first two issues and focus our gaze squarely on the third issue, which is dispositive of the whole petition.  A quick review of some asylum fundamentals explains why.

An applicant for asylum must show that they have suffered or have a well-founded fear of suffering "persecution," which is harm on account of a protected ground "either . . . perpetrated by the government itself or by a private actor that the government is unwilling or unable to control." Aguilar-Escoto v. Garland, 59 F.4th 510, 518 (1st Cir. 2023) (citing Rosales-Justo v. Sessions, 895 F.3d 154, 162 (1st Cir. 2018)).  If an

- 6 -

applicant shoulders their burden as to past persecution, they get the benefit of a presumption that they will face persecution in the future on the basis of the original claim. 8 C.F.R. § 208.13(b)(1).[4] All that said, however, even if an applicant makes a sufficient showing that they have suffered past persecution or have a well-founded fear of future persecution, their application for asylum will be denied if the adjudicator determines that they could avoid persecution by internally relocating within the country of removal and, under all the circumstances, it would be reasonable to do so. See Khattak v. Holder, 704 F.3d 197, 202 (1st Cir. 2013); Tendean v. Gonzales, 503 F.3d 8, 11 (1st Cir. 2007); 8 C.F.R. §§ 208.13(b)(1)(i)(B), (b)(2)(ii). Applying this framework to Caz's case, assuming he testified credibly and assuming his attackers were motivated by his Quechua heritage (thus constituting past persecution and entitling him to that helpful presumption of future persecution), if we conclude substantial

---

[4] As we noted earlier this year, "[i]n December 2020, the Department of Homeland Security and Department of Justice published a joint rule that amended portions of 8 C.F.R. § [208.13], including subsection [(b)(3)], which is cited in this opinion." Reyes-Ramos v. Garland, 57 F.4th 367, 369 n.1 (1st Cir. 2023) (citing Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80274 (Dec. 11, 2020)). But that rule has been enjoined, id. (citing Pangea Legal Servs. v. U.S. Dep't of Homeland Sec., 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021)), so any citation in this opinion to 8 C.F.R. § 208.13 is to the 2020 version of that regulation -- the version in effect immediately prior to the promulgation of the enjoined rule.

evidence supports the BIA's conclusion about the feasibility of internal relocation (more on what substantial evidence means in just a moment), his petition must be denied regardless.

Turning, accordingly, to the internal relocation issue, "[f]or an applicant to be able to internally relocate safely, there must be an area of the country where he or she has no well-founded fear of persecution." Matter of M-Z-M-R-, 26 I. & N. Dec. 28, 33 (B.I.A. 2012) (citing cases). "[T]he purpose of the relocation rule is not to require an applicant to stay one step ahead of persecution," so any proposed area of relocation "must present circumstances that are substantially better than those giving rise to a well-founded fear of persecution on the basis of the original claim." Id. In considering an applicant's ability to safely relocate internally, the adjudicator must assess the totality of the circumstances, including "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C.F.R. § 208.13(b)(3). Along these same lines, an applicant's prior successful internal relocation and the continued safe residence of the applicant's family members[5] in the

_____

[5] Of course, if those family members are not "similarly situated" (i.e., they do not have the applicant's same protected

- 8 -

country of removal can be relevant to the analysis as well.  See, e.g., López-Pérez v. Garland, 26 F.4th 104, 112 (1st Cir. 2022); Chen Qin v. Lynch, 833 F.3d 40, 45 (1st Cir. 2016).

Here, as a reminder, the IJ determined that Caz could safely relocate within Ecuador to Riobamba, as evidenced by the fact that he returned there after the attacks in Guayaquil and lived safely for one year before fleeing to the United States. The BIA affirmed on this same basis and observed Caz made no unreasonable-to-relocate argument.  The standard we apply to our review of that decision -- the substantial evidence standard -- determines the outcome here.  See Tendean, 503 F.3d at 10–11.

Substantial evidence requires any finding be "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Odei v. Garland, 71 F.4th 75, 78 (1st Cir. 2023) (citation and internal quotation marks omitted).  To reverse under the substantial evidence standard means that "the evidence must not only support the contrary finding, but compel it."  Mahmoud v. Barr, 981 F.3d 122, 126 (1st Cir. 2020) (citing Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003)).  In other words, reversal requires that "the evidence point[] unerringly in the opposite direction."  López-Pérez, 26 F.4th at 111 (quoting

---

characteristic that can lead to potential persecution), their continued residence in the country of removal is given little weight in the internal relocation calculus.  See Morales-Morales v. Sessions, 857 F.3d 130, 134 n.1 (1st Cir. 2017).

Rashad v. Mukasey, 554 F.3d 1, 6 (1st Cir. 2009)). And "where, as here, the BIA accepts the IJ's findings and reasoning yet adds its own gloss, we review [under the substantial evidence standard] the two decisions as a unit." Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015) (quoting Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014)).

Crucially, under the substantial evidence standard, the question we must answer is not whether the record included any evidence suggesting Caz could not relocate safely within Ecuador. Nor is the question whether we would have reached an opposite conclusion to the IJ and BIA. Rather, the question is whether a reasonable factfinder, having considered all the evidence, would be compelled to conclude that Caz could not safely relocate within Ecuador. See Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023).

A summary of the evidence presented below on this issue explains why we answer that question in the negative. On one side of the equation is the evidence suggesting Caz could not safely relocate within Ecuador: 1) Caz presented four country conditions reports detailing widespread discrimination in Ecuador against members of the Quechua indigenous group; 2) in response to his attorney's question regarding whether internal relocation would help him avoid future harm, Caz responded, "No. I don't think so because it -- it's the same everywhere. They rob and kill and

hurt people all over."; and 3) in response to his attorney's follow-up question, asking "[W]ere you afraid that other people might target you for being indigenous in other parts of Ecuador too?", Caz responded affirmatively.

On the other side of the equation is the evidence suggesting Caz could safely relocate within Ecuador:  1) he testified that other than the two violent incidents in Guayaquil, he never suffered any other violence in Ecuador; 2) for the first twenty-two years of his life and the year following the attacks, he lived safely in Riobamba; 3) he testified that his parents (also members of the Quechua indigenous group) continued to live in Riobamba unharmed;[6] and 4) when later asked again whether he could safely relocate within Ecuador, he responded, "Maybe.  There might be another state, but most of the country is the same."  Balancing all this evidence together, we simply cannot conclude that a reasonable factfinder would have been compelled to a contrary conclusion, especially where Caz lived safely in Riobamba for the

---

[6] Specifically, Caz stated, "I don't think [my parents have suffered as a result of being indigenous], because they never -- they never leave the place where we used to live.  They never go out."  To the extent "the place where we used to live" refers to Riobamba, that would support the IJ's determination that Caz could safely relocate there.  Alternatively, to the extent "the place where we used to live" refers to his parents' property and Caz meant to imply that his parents do not leave their property out of safety concerns, he provided no evidence to that effect such that the IJ could have reasonably concluded his parents faced risks of violence in Riobamba.

vast majority of his life in Ecuador, his Quechua parents continue to live there, and he himself stated that "[t]here might be another state" where he could safely reside.

Caz resists this conclusion, offering three arguments why the conclusion is not supported by substantial evidence. First, he contends that the IJ and the BIA disregarded the country conditions evidence and his testimony indicating internal relocation would not have been possible. We know this is not true, because the IJ's oral decision specifically cited the country conditions reports and Caz's testimony, demonstrating they were thus considered.

Second, Caz argues that, as the beneficiary of a presumption of future persecution, the burden shifted to the government to establish that internal relocation was reasonable. Because the government provided no evidence to refute Caz's testimony and the country conditions reports -- the argument goes -- the government did not carry its burden and the BIA erred in affirming the IJ's internal-relocation analysis. That presumption, however, can be rebutted through the applicant's own testimony. See, e.g., Herrera v. Garland, No. 21-60120, 2023 WL 1432009, at *3 (5th Cir. Feb. 1, 2023); Sherpa v. Barr, 837 F. App'x 826, 829 (2d Cir. 2020). And recall that Caz testified that the attacks were localized to Guayaquil, he suffered no violence

in Riobamba, his parents still lived there safely, and he conceded there were perhaps some states where he could live safely.

Caz's third and final argument is that relocation must be reasonable under the totality of the circumstances and, because there is evidence in the record to suggest Caz faced employment discrimination in Riobamba, relocating there is not reasonable. This argument appeared for the first time not in his opening brief, but at oral argument. Setting aside the fact that this argument is, accordingly, waived, see Barros v. Garland, 31 F.4th 51, 62 n.8 (1st Cir. 2022), we reach the argument's merits for the sake of completeness, see, e.g., Vaz Dos Reis v. Holder, 606 F.3d 1, 4 n.3 (1st Cir. 2010) (considering claim that was not advanced before the court "[f]or the sake of completeness"); Kheireddine v. Gonzales, 427 F.3d 80, 86 n.6 (1st Cir. 2005) (ignoring "[f]or argument's sake . . . a waiver of [an] argument" and considering the argument's merits).

The only case Caz offered at oral argument for that proposition is Matter of T-Z-, where the BIA noted that economic harm can amount to persecution where "[t]he economic difficulties [are] above and beyond those generally shared by others in the country of origin and involve noticeably more than mere loss of social advantages or physical comforts" and "the harm [is] of a deliberate and severe nature and such that is condemned by civilized governments." 24 I. & N. Dec. 163, 173 (B.I.A. 2007)

(citation and internal quotation marks omitted). The only evidence in the record Caz offered at oral argument for the proposition that he endured employment discrimination in Riobamba was two sentences in his written affidavit: "The town I grew up in Ecuador was very small so I decided to make my way to Guayaquil to find work. I knew that people sometimes looked down on me and other Quechua people because of our heritage but I believed that in a larger city I would be safer and have an easier time finding work and not being discriminated against." These two sentences hardly satisfy the standard set forth in Matter of T-Z-. Moreover, his claims of employment discrimination in Riobamba are belied by other aspects of the record. For example, during his credible fear interview, Caz was asked why he could not secure work in Riobamba, to which he replied, "I live in the country, and there is no work there, so I had to go far to look for work." His answer suggests that his lack of employment in Riobamba was not a result of discrimination, but rather limited employment opportunities in a rural area. As such, any suggestion that employment discrimination in Riobamba would make Caz's relocation there unreasonable is not borne out by the record.

Having reviewed the evidence and considered all Caz's arguments, we conclude that the IJ's and BIA's decisions as to internal relocation are supported by substantial evidence and his application for asylum was, therefore, appropriately denied. The

- 14 -

corollary to this conclusion is that withholding of removal was also appropriately denied because such relief requires a higher showing than asylum.[7]  See Tendean, 503 F.3d at 11.

**CONCLUSION**

For the foregoing reasons, the petition is **denied**.

---

[7] Nowhere did Caz challenge the BIA's determination to deem waived the issue of CAT protection.  So, to the extent he wished to challenge that determination, any arguments he had to that effect are waived.