# United States Court of Appeals
## For the First Circuit

No. 25-1038

EDWIN DAVID RAMOS-HERNANDEZ; SHEYLY CRISTABEL LOPEZ; D.Z.R.L.,

Petitioners,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Lynch, and Howard,
<u>Circuit Judges</u>.

Kevin P. MacMurray and MacMurray & Associates on brief for petitioners.

Lindsay Marshall, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Brett A. Shumate, Assistant Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 22, 2025

**LYNCH**, **Circuit Judge**.  Edwin David Ramos-Hernandez, his wife Sheyly Cristabel Lopez, and their minor daughter D.Z.R.L. petition for review of a December 11, 2024, decision of the Board of Immigration Appeals ("BIA"), which affirmed an Immigration Judge's ("IJ") order denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").   See  8  U.S.C.  §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. § 1208.16.  We deny the petition and explain why the agency's ruling was supported by substantial evidence and committed no error of law.

## I.

## A.

Ramos-Hernandez, Lopez, and D.Z.R.L. are citizens of Guatemala who entered the United States on September 8, 2021.  On October 20, 2021, the Department of Homeland Security served them with Notices to Appear, charging them with removability pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  On August 4, 2022, Ramos-Hernandez and Lopez filed applications for asylum, withholding of removal, and relief under the CAT, naming their daughter as a derivative beneficiary. D.Z.R.L. also submitted her own applications for the same relief.

Ramos-Hernandez and Lopez both testified before the IJ at a merits hearing on July 24, 2024.  The IJ recounted the record evidence, which included some inconsistencies, but nevertheless

- 2 -

found the petitioners to be credible. However, the IJ concluded the petitioners had not met their burdens as to any claims for relief.

We describe the facts as found by the IJ, noting where there are inconsistencies in the record. Lopez completed high school and earned a teaching certification in Guatemala. She found it difficult to secure employment, in part because she had lost a finger in a childhood accident. When she was about eighteen years old, she began working at her uncle's hardware store. In 2018, her uncle retired and sold the store to Lopez and her partner Ramos-Hernandez, whom she had begun dating.

Around 2019, Lopez received a text message from an unknown number demanding payment if she wished to continue operating the store. The petitioners later received a note again demanding payment. Ramos-Hernandez was also attacked while riding his motorcycle, although the date of the incident is unclear from the record.[1] Unknown assailants hit him with a tree branch from behind, knocked him to the ground unconscious, and beat him. Emergency services were called, and he chose to recover at his mother's home because he had never been to a doctor or hospital

---

[1] A declaration from Ramos-Hernandez's mother, as well as police and ambulance reports in the record, indicate the attack occurred on November 26, 2019. However, Lopez's declaration stated the attack occurred approximately "[t]en months before the threats began" in 2019 (emphasis added).

and feared being extorted.

In the face of these demands, the petitioners kept their store open only on a reduced schedule before eventually closing it in approximately 2019. They testified that they are concerned about increased criminality in Guatemala and about the safety of their children.

**B.**

On July 24, 2024, the IJ denied the petitioners' applications for relief and protection on all grounds.

Regarding the asylum claims, the IJ found the petitioners had failed to establish either past persecution or a well founded fear of future persecution on account of a statutorily protected ground. See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(1). As to past persecution, the IJ held that the record established only "sporadic mistreatment on a couple of isolated events." As to a well founded fear of future persecution, the IJ concluded that there was no reasonable possibility the petitioners would be singled out again, because they had closed their business and had not faced any threats unrelated to it. Further, the IJ determined that the petitioners had not established they could not reasonably and safely relocate internally within Guatemala: they lived at home for approximately two years after closing their business without incident, they did not explain how their extorters may find them if they moved within Guatemala, and

- 4 -

they did not know the identities of their extorters.

The IJ also did not find a nexus between the harm the petitioners suffered and their proposed particular social groups (PSGs): "Guatemalan small business owners" and the "Lopez-Ramos-Hernandez nuclear family." The "small business owners" proposed PSG was not cognizable, the IJ held, because it lacked immutability and particularity. The IJ noted that "business ownership can change without impacting identity" and that the petitioners' proposed group, "which seemingly includes all small business owners [in Guatemala] of many ages and backgrounds," was vaguely defined. As to the "nuclear family" proposed PSG, the IJ noted that "[n]exus is not established simply because a particular social group of family members exists and the family members experienced harm" and found that "[t]he evidence does not show that the [petitioners'] familial relationship to the Lopez-Ramos-Hernandez nuclear family was at the root of the harm they experienced." To the extent that the petitioners also argued that they were targeted based on their anti-gang political opinion, the IJ concluded that there was insufficient evidence to suggest that they had ever expressed such a political view in public, or that the alleged harm was perpetrated by a purported gang.

Having found that the petitioners did not "clear the lower hurdle for asylum," the IJ found that the petitioners "necessarily fail[ed] to meet the higher bar for withholding of

removal," which requires a "clear probability of persecution." Finally, the IJ denied the petitioners' CAT claims, finding that they did not present a compelling reason as to why they could not relocate, their past experiences did not amount to torture, and the evidence did not establish that they would face a particularized risk of government-sanctioned torture upon their return to Guatemala.

On October 16, 2024, the petitioners timely appealed the IJ's decision to the BIA. On December 11, 2024, the BIA affirmed the IJ's denial without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), rendering the IJ's decision the final agency determination.

Ramos-Hernandez, Lopez, and D.Z.R.L. timely petitioned this court for review.

**II.**

"As the BIA affirmed without opinion, we focus our review on just the IJ's decision and consider the IJ's findings and conclusions to be those of the BIA as well." Alvarado-Reyes v. Garland, 118 F.4th 462, 470 (1st Cir. 2024).

We apply the deferential substantial evidence standard to the IJ's factual findings, upholding them "unless any reasonable adjudicator would be compelled to conclude to the contrary." Alves v. Bondi, 128 F.4th 297, 298 (1st Cir. 2025) (quoting Singh v. Mukasey, 543 F.3d 1, 4 (1st Cir. 2008)). We may not "supplant

- 6 -

[an] agency's findings merely by identifying alternative findings that could be supported by substantial evidence." Montoya-Lopez v. Garland, 80 F.4th 71, 79 (1st Cir. 2023) (alteration in original) (quoting in parenthetical Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992)); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it."). We review the agency's conclusions of law de novo. See Ramos-Gutierrez v. Garland, 110 F.4th 1, 6 (1st Cir. 2024).

## III.

### A.

We turn first to the petitioners' asylum applications. To qualify for asylum under § 208(b)(1) of the INA, the petitioners must show that they are "refugee[s]" within the definition of 8 U.S.C. § 1101(a)(42), which here means showing they are "unable or unwilling to return to" Guatemala because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (emphasis added). "Establishing persecution requires proof of three discrete elements: a threshold level of past or anticipated serious harm, a nexus between that harm and government action or inaction, and a causal connection to one of the five statutorily protected grounds." Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir.

2024) (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021)). In order to satisfy the third element, the petitioners must demonstrate that one of the five protected grounds under the INA is at least "one central reason for the harm alleged." Montoya-Lopez, 80 F.4th at 80 (internal quotation marks omitted) (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023)); see also 8 U.S.C. § 1158(b)(1)(B)(i).

If the petitioners demonstrate that they have suffered from past persecution on account of a statutorily protected ground, they are entitled to a rebuttable presumption that they have a well founded fear of future persecution on account of the same protected ground. Esteban-Garcia, 94 F.4th at 191 (quoting 8 C.F.R. § 1208.13(b)(1)). If they do not make such a showing, they "must independently demonstrate a well-founded fear of future persecution that is 'both subjectively genuine and objectively reasonable.'" Id. (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10-11 (1st Cir. 2013)).

Substantial evidence supports the IJ's determinations against the petitioners. The petitioners cannot establish that their past persecution or fear of future persecution is on account of a protected ground, so their asylum claims must fail. "For both past and future persecution claims, '[a]n inability to establish any one of the three elements of persecution will result in a denial of [the] asylum application.'" Esteban Garcia, 94

- 8 -

F.4th at 191 (alterations in original) (quoting Aguilar-De Guillen v. Sessions, 902 F.3d 28, 33 (1st Cir. 2018)).

The BIA did not err in affirming the IJ's determinations that "Guatemalan small business owners" is not a cognizable PSG and that the petitioners had failed to show a nexus between the harm they experienced and their second proposed PSG, "the Lopez-Ramos-Hernandez nuclear family." To establish a legally cognizable PSG, an asylum applicant must show that "the group (1) has members who share a common immutable characteristic, (2) is defined with particularity, and (3) is socially distinct within the society" in question. Sanchez v. Garland, 74 F.4th 1, 6 (1st Cir. 2023). A characteristic may be immutable even when individuals can technically change it if they "should not be required to change [it] because it is fundamental to their individual identities or consciences." Montoya-Lopez, 80 F.4th at 82 (citation omitted). Whether a proposed PSG is cognizable is ultimately a legal question. See Hernandez-Mendez v. Garland, 86 F.4th 482, 490 (1st Cir. 2023).

This court has held that proposed PSGs similar to "Guatemalan small business owners" are not cognizable because they are overly broad and do not implicate an immutable characteristic. In Cabrera v. Garland, 100 F.4th 312, 322 (1st Cir. 2024), we affirmed that the petitioners did not establish that "small business owners" in Guatemala was a cognizable PSG because, even

assuming dubitante that this characteristic was immutable in that individuals should not be required to change it, the specific petitioners there "pointed to exactly zero evidence in the record to suggest that being a small business owner was fundamental to [the petitioners'] identity or conscience." And in repeated other cases, this court has held that similar PSGs are not cognizable. See, e.g., Sanchez, 74 F.4th at 6 (upholding determination that the group "Salvadoran business owners perceived as wealthy" was not a valid PSG); Hernandez-Martinez v. Garland, 59 F.4th 33, 37-39 (1st Cir. 2023) (upholding determination that the group "business owners in Guatemala who have a high profit" was not a valid PSG).

We reject the petitioners' arguments that they fall into exceptions to these rulings. The petitioners' proposed group -- "Guatemalan small business owners" -- is not meaningfully different from prior groups we have rejected that are defined by economic status or perceived wealth. The petitioners do not address this caselaw. Instead, Lopez argues that her identity as a small business owner is an immutable characteristic core to her identity because it allowed her to escape the discrimination she suffered due to her dismembered finger and because the hardware business was a family business. However, the record does not compel the conclusion that being a small business owner was fundamental to Lopez's identity because she studied to be and initially sought employment as a teacher in Guatemala, and she has

since worked at a daycare and as a house cleaner in the United States. The petitioners further argue that if their identities as small business owners were not immutable, they "would not have operated the business, even as the extortion demands and threats began." This argument is circular and, in any event, they testified that they did close down the business shortly after the extortion began.

Substantial evidence also supports the IJ's determination that the petitioners failed to establish a nexus between their experienced harm and their membership in the "Lopez-Ramos-Hernandez nuclear family." The record reflects that the family was extorted because they operated a successful hardware business, not because of kinship itself. Lopez's own testimony confirms this point, as she was concerned about returning to Guatemala because there "have been a lot of attacks happening" and "there is a lot of violence" -- not because of her status as a Lopez-Ramos-Hernandez family member. As our caselaw has repeatedly established, the mere fact that members of the same family were harmed does not establish that the family connection was a central motivation for the suffered harm. See Cano v. Bondi, 152 F.4th 237, 247 (1st Cir. 2025) (no nexus between threats and membership in petitioner's family where petitioner was targeted by gangs because her father operated a successful business); Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012)

- 11 -

(persecution claims based on nuclear family relationship failed where "multiple family members happen to be persecuted for a common reason but the [reason for] animus [was] not kinship").

Additionally, the agency did not err in finding that the petitioners had not been targeted on account of their anti-gang political views. Simply holding a political view is not enough to show persecution on account of those beliefs. Rather, "we have required, at a minimum, 'evidence that the would-be persecutors knew of the [political] beliefs and targeted the belief holder for that reason.'" Urgilez Mendez v. Whitaker, 910 F.3d 566, 571 (1st Cir. 2018) (quoting Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010)). While the petitioners characterize their refusal to pay the extortion fee as evidence of their anti-gang political opinion, the private nature of the petitioners' resistance to purported gang activity (only filing police reports) is insufficient to establish that persecutors would have known of those beliefs. See id. (holding the fact "that the petitioner went to the police to stop gang members from extorting money from his family and his neighbors" was insufficient to establish an expressed political view). Furthermore, the petitioners also testified that they did not know who sent the threats, and thus the IJ did not err in finding there was no evidence of a connection between the harm suffered and the petitioners' purported political view.

The BIA also did not err in affirming the IJ's determination that petitioners failed to establish past persecution. "Persecution goes beyond 'unpleasantness, harassment, and even basic suffering.'" Santos Garcia v. Garland, 67 F.4th 455, 461 (1st Cir. 2023) (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000)). "To show past persecution, 'the discriminatory experiences must have reached a fairly high threshold of seriousness, as well as [occurred with] some regularity and frequency.'" Martínez-Pérez v. Sessions, 897 F.3d 33, 39-40 (1st Cir. 2018) (alteration in original) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)).

Here, the evidence consists of two to three relatively vague threats and one physical attack that may or may not have been connected to those threats. The IJ had reason to believe that the attack against Ramos-Hernandez was not necessarily related to the prior extortion, particularly given the inconsistency in the record over when the incident occurred and the lack of evidence regarding motive. This court has found that even more severe situations did not constitute persecution. See, e.g., Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) (finding no persecution based on two incidents of beatings and death threats from the police, one of which resulted in loss of consciousness and hospitalization); Gilca v. Holder, 680 F.3d 109, 115 (1st Cir. 2012) (rejecting past persecution argument where the

- 13 -

record showed no linkage between verbal threats to petitioner and an incident of physical violence against the petitioner).

Similarly, substantial evidence supports that the petitioners failed to establish a well founded fear of future persecution. "An applicant has a 'well-founded fear of persecution' in [his or] her country [upon] establish[ing] that [his or] her fear is both (1) subjectively genuine and (2) objectively reasonable, meaning that a reasonable person in the applicant's circumstances would fear persecution." Sugiarto v. Holder, 586 F.3d 90, 94 (1st Cir. 2009) (citing Castillo-Díaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009)). The objective prong is satisfied only where there is "'credible, direct, and specific evidence' supporting a fear of individualized persecution in the future, or by demonstrating 'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of' a protected ground." Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009) (omission in original) (citation omitted) (first quoting Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003); and then quoting 8 C.F.R. § 1208.13(b)(2)(iii)(A)). Given that the petitioners closed their store and remained in Guatemala for approximately two years after receiving the threats with no further incidents, they have not presented credible, direct, and specific evidence supporting a fear of individualized future persecution. Because they have not

established membership in a PSG, the petitioners also have not shown a pattern or practice of persecution of a similarly situated group on account of a protected ground.

The IJ further determined that the petitioners had not shown they "could not have reasonably and safely relocated internally to another part of Guatemala." Reviewing this finding under the substantial evidence standard, "the question we must answer is not whether the record included any evidence suggesting [the petitioners] could not relocate safely within" Guatemala. Caz v. Garland, 84 F.4th 22, 28-29 (1st Cir. 2023). "[T]he question is whether a reasonable factfinder, having considered all the evidence, would be compelled to conclude that [the petitioners] could not safely relocate within" Guatemala. Id. at 29. Because the petitioners have not shown past persecution, they bear the burden "to establish that relocation would be unreasonable." Camara v. Holder, 725 F.3d 11, 15 n.3 (1st Cir. 2013).

Applying this standard, the IJ had substantial evidence to conclude that the petitioners reasonably could have relocated within Guatemala, given that they continued to live in Guatemala for over a year after the threats and attack. We have held petitioners' unimpeded movement within their country of origin helps "demonstrate[] that [they] can relocate safely." Chen Qin v. Lynch, 833 F.3d 40, 45 (1st Cir. 2016). The petitioners here have not presented additional specific evidence explaining why

they cannot relocate, beyond general conditions of corruption and violence in Guatemala. Cf. Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) (country condition reports are not dispositive in CAT claims when they do not "override petitioner-specific facts").

**B.**

The burden of proof required for withholding of removal is higher than that for asylum. Therefore, "a noncitizen who cannot meet the lower asylum standard will necessarily fail to make out a counterpart claim under the higher standard for withholding of removal." López-Pérez v. Garland, 26 F.4th 104, 111 (1st Cir. 2022). Because we affirm the BIA's holding as to the asylum claims, we also reject the petitioners' withholding of removal claims.

**C.**

As to their CAT claims, the agency correctly determined that the petitioners did not meet their burden of presenting a preponderance of the evidence showing that if they returned to Guatemala, they "would be subject to torture by or with the acquiescence of a government official." Perez-Trujillo v. Garland, 3 F.4th 10, 18 (1st Cir. 2021) (internal quotation marks omitted) (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014)). Substantial evidence supported the IJ's conclusion that there was no objectively reasonable basis to believe that the petitioners would be harmed at all upon their return to Guatemala,

given that they lived peacefully without incident for more than a year after closing their business. In light of that finding, the record does not compel the conclusion that the petitioners would face torture by anyone upon their return. Similarly, the IJ's factual finding in the context of the petitioners' asylum claims that they had failed to establish that relocation in Guatemala would be unreasonable also supports denial of their CAT claims.

## IV.

For the foregoing reasons, the petition for review of the decision of the BIA is **<u>denied</u>**.